### David Nzomo, et al. v. Vermont State Colleges

[385 A.2d 1099]

No. 250-76

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed April 4, 1978

Motion for Reargument Denied April 17, 1978

*H. Thomas Andersen* and *David A. Jenkins* of *Hoff, Wilson & Jenkins,* Burlington, for Plaintiffs.

*Matthew I. Katz* of *Latham, Eastman, Schweyer and Tetzlaff,* Burlington, and *Nicholas DiGiovanni, Jr.,* of *Morgan, Brown, Kearns & Joy,* Boston, Massachusetts, for Defendant.

**Daley, J.** Pursuant to the statutory grievance procedure, the plaintiff appealed the termination of his employment as an untenured member of the faculty at Castleton State College, one of the defendant Vermont State Colleges. Plaintiff alleged, but the Vermont State Employees Labor Relations Board failed to find, a discriminatory application of a rule or regulation in the termination of plaintiff's employment. On appeal to this Court from the Board's dismissal, plaintiff

submits the following amended certified question as required by V.R.A.P. 13:

> Did the Board err in dismissing the grievance of David Nzomo against the Vermont State Colleges?

Plaintiff, Dr. Daudi (David) Nzomo, was first appointed to his position as a nontenured Assistant Professor of Business at Castleton State College in August of 1972. He was reappointed early in 1973 for the 1973–74 school year and again early in 1974 for the 1974–75 school year. There was a change of heart, however, in August of 1974 when the President of Castleton State College informed plaintiff by letter that he would not be reappointed beyond the 1974–75 school year. On April 15, 1975, the plaintiff and the Vermont State Colleges Faculty Federation instituted a grievance proceeding pursuant to 3 V.S.A. § 926 which resulted in four days of hearings before the Vermont State Employees Labor Relations Board in June and July of 1975.

Disposition of plaintiff's grievance arising from the August 1974 decision to terminate his employment presents three questions: first, was the defendant obliged to follow a particular procedure in terminating the plaintiff; secondly, what was that procedure; and thirdly, did the defendant comply with the procedure?

No one contests the existence of two sets of rules bearing on the plaintiff's termination. Defendant's board of trustees had the power to make by-laws and regulations for the government of each institution under its control, 16 V.S.A. §§ 2174, 2175, and pursuant to this authority the defendant issued a Vermont State Colleges Handbook which included the first of these two sets of rules. That there was compliance with these rules in this case is a matter of finding by the Board and uncontested by the plaintiff. The State Colleges Handbook provided, in addition, that each college should publish a faculty handbook containing further rules for its own government. In response to this directive, the Castleton State College Faculty Handbook included the second set of rules regarding faculty promotion, tenure, retention, dismissal, and nonrenewal, which is likewise applicable to the

plaintiff's termination. These rules, which are at the heart of this dispute, provide as follows:

1. Department Chairmen, in those Divisions where they exist, make recommendations with respect to faculty under their direction, and forward same to the appropriate Division Director.

2. The Division Director reviews the recommendations forwarded to him and makes his own recommendations. Both Division Directors and Chairmen discuss their recommendations in private conference with individual faculty members involved. Faculty are asked to sign the statement of recommendations in order to acknowledge that they have read the reports. The Division Director forwards the signed reports to the Dean for Academic Affairs.

3. Recommendations are brought to the President's Advisory Council on Promotion and Tenure. The Committee review [sic] all recommendations submitted by the Dean for Academic Affairs, and may also conduct reviews on its own motion.

4. The President's Advisory Council on Promotion and Tenure then recommends appropriate action to the President with respect to the faculty members who have been reviewed.

It is a firmly established principle of administrative law that defined dismissal procedures, although generous beyond the due process requirements that bind the agency, are binding and must be scrupulously observed. *Vitarelli* v. *Seaton*, 359 U.S. 535, 547 (1959) (Frankfurter, J., concurring in part and dissenting in part). This principle has been applied specifically in cases involving termination of untenured faculty at state colleges. *Mabey* v. *Reagan*, 537 F.2d 1036, 1042 (9th Cir. 1976); *Ferguson* v. *Thomas*, 430 F.2d 852, 856 (5th Cir. 1970); *Greene* v. *Howard University*, 412 F.2d 1128, 1131 (D.C. Cir. 1969). It is not argued that the operation of this principle in any way affects the defendant's absolute right to terminate untenured faculty; rather, its sole effect is to regulate the procedure by which that right is exercised.

The defendant does not dispute the binding nature of the termination procedure promulgated pursuant to its rule making powers. It does dispute the content of that procedure. The Board found that there was compliance with the first set of rules in the Vermont State Colleges Handbook, but not with the second set of rules in the Castleton College Faculty Handbook, specifically Rules Two, Three and Four. Conceding its failure to comply with the rules as written, defendant argues, and the Board found, that the rules had been modified by past conduct and no longer constituted the requisite termination procedure. Rules Three and Four in the Castleton Handbook required the Department Chairman and the Division Director to submit their recommendations to the President's Advisory Council on Promotion and Tenure for its recommendation. Defendant claims that the failure to consult the Advisory Council is consistent with its past conduct in termination decisions made during the summer months when the Council members are not present on campus and thus not available for consultation. Even if this deviation from Rules Three and Four as written were consistent with the requisite termination procedure based on an effective modification of the rules, there remains unexplained the lack of compliance with Rule Two, which requires that, before transmittal to the Dean and the Council, the recommendation for termination be discussed with the faculty member in question.

We are not persuaded, however, by the defendant's argument of modification by past conduct, and we must reverse the Board's finding of the modification as clearly erroneous and unsupported by any credible evidence. *In re Grievance of Brooks*, 135 Vt. 563, 382 A.2d 204 (1977).

Defendant's argument is based on an analogy to a principle of contract law that proof of usage or custom is admissible to explain or interpret the meaning of contractual language. See *Lambourne* v. *Manchester Country Properties, Inc.*, 135 Vt. 178, 374 A.2d 122, 123 (1977). The analogy to contract law in this situation is an apt one. We agree that the hiring policies and practices of the defendant, as embodied in its regulations, form an essential part of its contractual relationship with its employees, *Ferguson* v. *Thomas, supra,* 430 F.2d at 856, and that these relationships should be viewed

against the practices customarily followed by the defendant. *Greene* v. *Howard University, supra,* 412 F.2d at 1131. The proper application of this contractual principle does not, however, support the defendant's contention and the Board's finding of modification based on past conduct. Before a modification based on custom or usage can be established, it must appear that, first, there is sufficient ambiguity in the contract to require resort to extraneous circumstances such as custom or usage, *Lambourne* v. *Manchester Country Properties, Inc., supra,* 135 Vt. 178, 374 A.2d at 123; *Pond* v. *Carter,* 126 Vt. 299, 309, 229 A.2d 248, 255 (1967), and, secondly, there is adequate notice of the custom or usage to the party against whom it is asserted. *E. L. Stoddard & Son* v. *Village of North Troy,* 102 Vt. 462, 469, 150 A. 148, 151 (1930). The record does not contain any evidence nor does the Board make any findings of ambiguity or notice, and in their absence mere evidence of conduct at variance with the rules is insufficient to effect a modification.

█ The rules in the Castleton Handbook governed the procedure to be followed in plaintiff's termination. In the absence of valid modification of these rules based on past conduct, we find that the defendant in failing to follow the written rules failed to comply with the requisite procedure. No further analysis is required to reach the conclusion that the plaintiff had a valid claim under 3 V.S.A. § 902 (14) based on the discriminatory application of a rule or regulation. An actionable grievance under this provision does not require a finding of racial bias or malicious motive as would be required in an action for an unfair labor practice under 3 V.S.A. § 961. Likewise, the absence of any constitutionally impermissible bias or motive, or indeed the presence of absolute good faith, does not vindicate the defendant for its failure to comply with the termination procedure. Discrimination in this instance simply means unequal treatment of individuals in the same circumstances under the applicable rule. *Baker* v. *California Land Title Co.,* 349 F. Supp. 235, 238 (D.C. Cal. 1972); *State* v. *Pate,* 47 N.M. 182, 138 P.2d 1006, 1009 (1943). It is clear to us that the rules as written in the Castleton Handbook are binding on the defendant, that they have not been modified by past conduct, and that the defendant has

failed to apply these rules in plaintiff's case. This without more is sufficient to require a finding of discrimination which constitutes a grievance under 3 V.S.A. § 926.

*The dismissal of the grievance by the Board is reversed and the cause remanded for further proceedings consistent with this opinion.*