**Diane Fairchild and the Vermont State Colleges Faculty Federations Local #3180, AFT, VFT, AFL–CIO v. Vermont State Colleges**

[449 A.2d 932]

No. 262-81

Present: **Barney, C.J., Billings, Hill, Underwood and Peck, JJ.**

Opinion Filed June 14, 1982

364

*Michael Schein* of *Hoff, Wilson, Powell & Lang, P.C.*, Burlington, for Plaintiffs-Appellants.

*Paul K. Sutherland* of *Doremus, Congleton & Jenkins*, Essex Junction, for Defendant-Appellee.

**Peck, J.** Grievant-appellant Diane Fairchild was formerly an assistant professor of physical education and an athletic coach at Johnson State College, one of the defendant-appellee Vermont State Colleges. On March 26, 1980, the president of Johnson informed grievant that she had been denied tenure due to her failure to satisfy the applicable tenure criteria. She thereupon filed a grievance with the Vermont Labor Relations Board. 3 V.S.A. §§ 926, 928. From the Board's dismissal of the grievance, she appeals to this Court.

The collective bargaining agreement between the Colleges and the Vermont State Colleges Faculty Federation requires each College in the Vermont State Colleges system to develop and publish criteria for tenure evaluations. The criteria relevant here, each of which must be satisfied if a professor is to obtain tenure, are: (1) superior teaching; (2) superior professional growth; (3) average college and community service; and (4) acquisition of a terminal degree in his or her major teaching field, or "significant professional, artistic

or scholarly accomplishment." Criterion four is the crux of this appeal, as it was in the proceedings before the Board.

Notwithstanding several warnings that her lack of terminal degree threatened her prospects for tenure, grievant did not acquire such a degree. She contends, however, that the College's decision that she failed to satisfy the alternative requirements under the fourth tenure criterion was both arbitrary and discriminatory. These requirements—that an applicant for tenure lacking a terminal degree must have demonstrated "significant professional artistic or scholarly accomplishment"—are defined in the tenure guidelines as, "[t]hose accomplishments in scholarship, professional public service, business, industry, the fine and performing arts and crafts which contribute to the goals of higher education."

We address first grievant's claim that the College's decision to deny tenure was based on an arbitrary application of the tenure criteria. The scope of our review, as was the Board's, is limited. It is irrelevant whether we would or would not choose to grant tenure to grievant. The decision has not been left to this Court or the Board, but is instead vested in the College. The agreement itself expressly mandates that the Board is to dismiss any grievance involving denial of tenure unless the reasons offered in support thereof represent an "arbitrary or discriminatory" application of the tenure criteria.

There is no question but that grievant was an outstanding coach and a superior teacher during her employment at the College. The Board's opinion speaks glowingly of her "tremendous" and "remarkable" coaching accomplishments. Nonetheless, the College determined, and the Board agreed, that even unusually high quality teaching or coaching were not adequate substitutes for a terminal degree under the fourth tenure criterion. We cannot hold this determination to be erroneous as a matter of law.

The collective bargaining agreement vests broad power in the administration of the Vermont State Colleges with respect to tenure decisions. By permitting the Colleges to develop and publish tenure criteria, the agreement also impliedly grants the Colleges significant leeway in the inter-

pretation of these criteria. In applying the alternative requirements to the terminal degree, the College has determined that outstanding coaching or teaching are not in themselves adequate. This is a reasonable interpretation of a provision which the parties agree is not susceptible of a fixed meaning. It is, moreover, consistent with the clear intent of the framers, that of ensuring that candidates for tenure demonstrate various accomplishments and abilities in addition to those displayed by their performance on the job. Accordingly, we conclude that there is a rational basis for the Board's decision to deny grievant tenure, hence it was not arbitrary.

Grievant argues next that the Board committed reversible error when it excluded evidence relating to a tenure award to another professor in the Vermont State Colleges system. Much of grievant's case before the Board was centered on an attempted comparison of her record with that of Peter Kramer, another coach and physical education professor at the College, who was awarded tenure even though he lacked a terminal degree. Grievant's representative even went so far as to say that: "We're willing to have the decision made strictly on a comparison between Kramer and [the grievant] and whether or not [her] achievements were significant professional accomplishments in terms of the criteria." It was only very late in the hearing that grievant attempted to elicit from the College's president information concerning the grant of tenure to still another faculty member, a Professor Warran. The College promptly objected, asserting that this evidence should have been introduced, if at all, during her case-in-chief. The Board agreed and sustained the objection.

██ The Board is not bound by the rules of evidence in its proceedings. 3 V.S.A. § 928(b)(3). Nevertheless, even though we presume that actions of administrative bodies are valid and reasonable, *In re Brooks*, 135 Vt. 563, 569, 382 A.2d 204, 208 (1977); *In re Young*, 134 Vt. 569, 570–71, 367 A.2d 665, 666 (1976), it is essential that the Board recognize the right of parties to present witnesses, give evidence, and examine witnesses. 3 V.S.A. § 928(b)(6). If an administrative body does unduly or unfairly restrict the presentation of evi-

dence so as to deprive a party of a meaningful opportunity to be heard, we will reverse. *In re Brooks, supra.*

In the instant case, the Board's evidentiary ruling challenged here did not deprive grievant of an opportunity to be fairly and fully heard. Having agreed to limit the Board's inquiry to a comparison with Professor Kramer, grievant cannot now complain of the Board's ruling holding her to her agreement. Moreover, her claim that this evidence was essential in order to counter the surprise engendered by the statement of the College's president that he had never considered superior teaching as satisfying the terminal degree requirement is unavailing at this point. Grievant had the opportunity during her presentation to introduce any evidence showing that the tenure criteria had been applied arbitrarily and discriminatorily to her; there is no reason why this evidence might not include the circumstances surrounding the grant of tenure to Warran as well it did in the case of Kramer. If, as she now suggests, evidence of the tenure decision involving Professor Warran is relevant to this inquiry, if indeed it would have been any more than cumulative, she should and could have introduced such evidence in a timely fashion. There was no error.

Finally, grievant asserts that the discriminatory manner in which the College applied the tenure criteria to her is demonstrated by its 1979 decision to tenure Peter Kramer, who also lacked a terminal degree in his major field of teaching.

In a related context we defined discrimination as the "unequal treatment of individuals in the same circumstances under the applicable rule." *Nzomo* v. *Vermont State Colleges,* 136 Vt. 97, 102, 385 A.2d 1099, 1102 (1978). Here the applicable rule is the alternative requirement to a terminal degree under the College's tenure criteria. The College determined that Kramer, unlike grievant, had demonstrated "professional, artistic or scholarly accomplishment" significant enough to substitute for a terminal degree. On review the Board concluded that this decision was reasonable and nondiscriminatory. We agree.

An extensive comparison of the accomplishments of plaintiff and Kramer is unnecessary in light of the Board's

exemplary treatment of this issue. Suffice it to say that grievant and Kramer are not "individuals in the *same* circumstances," *Nzomo, supra,* except for the common characteristics that both lacked terminal degrees and both were superior coaches and teachers. After thorough review the College determined that Kramer's accomplishments, which include but are not limited to a published article, significant professional public service outside his responsibilities at the College, and acquisition of a certificate in physical therapy, were adequate substitution for a terminal degree in his major field of teaching. That the College found grievant's achievements entitled to less weight is not discriminatory under the agreement but rather it is a valid application of the tenure criteria. As none of the relevant factors under the fourth tenure criterion are subject to precise measurement, to a great extent the decision whether to grant tenure is unavoidably a subjective one. On the unchallenged facts presented by this appeal we cannot say that the College's decision to deny tenure to grievant was arbitrary or discriminatory.

█ In cases such as this one the Court must tread with care lest we succumb to the temptations, which may occasionally beset us, to substitute our judgment for judgment made by others presumably best qualified, through the experience and expertise we do not have, as well as primary authority, to make them. *Ellis* v. *Department of Employment Security,* 133 Vt. 533, 536, 346 A.2d 221, 223 (1975). It is not the function of the courts or boards having judicial powers to administer, determine policy, or formulate decisions for public or semi-public agencies who have been granted that authority by the legislature.

*Judgment affirmed.*