Joseph S. D'Aleo and the Vermont State Colleges Faculty
Federation, Local #3180, AFT, VFT, AFL–CIO v.
Vermont State Colleges

[450 A.2d 1127]

No. 261-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed August 31, 1982

*Michael Schein* of *Hoff, Wilson, Powell & Lang, P.C.,* Burlington, for Plaintiffs-Appellants.

*Paul K. Sutherland* of *Doremus, Congleton & Jenkins,* Essex Junction, for Defendant-Appellee.

**Peck, J.** In March of 1980, the President of Lyndon State College notified grievant Joseph D'Aleo that he had been de-

nied tenure because of his failure to satisfy the pertinent tenure criteria. Grievant, having failed to obtain relief at the contractual grievance level, petitioned the Vermont Labor Relations Board pursuant to 3 V.S.A. § 926. He now appeals from the Board's dismissal of his petition. We affirm.

We consider first grievant's claim that the decision to deny tenure was based on an arbitrary application of the tenure criteria. Specifically, grievant asserted below and again on appeal that the notice he received was inadequate to permit him to comply with the controlling tenure criterion.

Grievant was hired to teach in the meteorology department of Lyndon, one of the appellee Vermont State Colleges, commencing in the fall of 1974. At the time he was employed, grievant was told that acquisition of a doctorate was not a prerequisite for tenure. In 1976, however, the Colleges, acting pursuant to the collective bargaining agreement, promulgated tenure criteria which, inter alia, mandated that tenure applicants acquire a "[t]erminal degree in major teaching field or significant professional, artistic or scholarly accomplishment." See *Fairchild* v. *Vermont State Colleges,* 141 Vt. 362, 449 A.2d 932 (1982). Grievant does not hold a Ph.D., the terminal degree in the field of meteorology.

Notwithstanding his lack of a terminal degree, in early 1977 grievant was informed by the Dean of Lyndon that although his chances for obtaining tenure were good, the safest course would be to acquire a terminal degree. In short, he was on notice that however good his chances for tenure might be, there was no guarantee without the terminal degree.

Grievant was promoted and reappointed for the academic year 1977–78 and reappointed for the academic years 1978–79 and 1979–80. In the fall of 1979, the Dean told grievant that in light of the manner in which the tenure criteria were then being applied, his prospects for tenure without a terminal degree were "very dim." It was in that year, 1979–80, that grievant was reviewed for tenure in accordance with article XXIV of the collective bargaining agreement. On March 27, 1980, the President of Lyndon notified grievant that he had been denied tenure "because of his failure to satisfy the criterion requiring a terminal degree or, alternatively, significant professional, artistic, or scholarly accomplishment."

In rejecting grievant's claim that he was, in effect, misled by the Lyndon administration concerning the necessity of the terminal degree, the Board concluded that, "He had over three years to comply with the new criteria; certainly sufficient time, especially since he had completed the bulk of his work leading to a doctorate degree."[1] After thoroughly reviewing the record we cannot hold this conclusion erroneous as a matter of law.

We have no dispute with grievant's argument that faculty at the Colleges must have adequate notice of policy changes which may affect their eligibility for tenure or promotion. In this case, however, the unchallenged facts establish that grievant did have actual notice that his prospects for tenure were in jeopardy unless he acquired a terminal degree. The most direct assurance grievant received, that from the Dean in 1977, was tempered with the caution that the safest route would be for grievant to acquire the degree. That he chose to rely on this slender reed of hope does not mean grievant was misled as to his standing. He was aware of the express provisions of the tenure criteria, promulgated pursuant to the bargaining agreement. Those provisions are controlling in these matters. Thus, the Board correctly denied grievant's claim of inadequate notice.

Grievant next contends that it was arbitrary for the Colleges to decide that he failed to satisfy the alternative requirements under the fourth tenure criterion. These requirements are that an applicant for tenure lacking a terminal degree must have demonstrated "significant professional artistic or scholarly accomplishment."

We believe that our recent decision in *Fairchild* v. *Vermont State Colleges, supra,* eliminates the need for us to engage in a lengthy discussion of this claim. While grievant's varied accomplishments may impress the lay mind, "[i]t is irrelevant whether we would or would not choose to grant

---

[1] Grievant completed the courses necessary for his doctorate by 1972. However, the university he was attending discontinued its meteorology program before he completed a qualifying exam and his thesis. For various reasons grievant did not complete these requirements in the one year grace period offered by the university.

tenure to grievant. The decision has not been left to this Court or the Board, but is instead vested in the College.", *Fairchild, supra,* 141 Vt. at 365, 449 A.2d at 934. Accordingly, we cannot hold the Colleges' decision that grievant failed to satisfy the alternative requirements to the tenure degree to be arbitrary.

Grievant also claims that the Colleges applied the alternative to the terminal degree criterion to him in a discriminatory manner. Grievant sought to prove such discrimination by comparing his record to that of a fellow professor in the Lyndon Meteorology Department who was granted tenure even though he, too, lacked a terminal degree.

The Board, in a majority opinion by its chairman, acknowledged that it found little ground to distinguish between the records of the two teachers. Nonetheless, the Board concluded that the Colleges' decision to deny grievant tenure did not constitute a discriminatory application of the tenure criteria. This decision was based on the Board's finding that:

> The Colleges distinguished the accomplishments of Woodall and Grievant on their respective publication records. Woodall published three articles while at Belknap and Lyndon in recognized publications of the American Meteorological Society (AMS). Grievant, meanwhile, published no articles in recognized professional journals. Grievant published in the proceedings from the 1977 Lyndon Storm Conference; these proceedings are not recognized by the AMS.

On appeal, grievant asserts that the publishing distinction relied on by the Colleges and upheld by the Board is not permitted by the tenure criterion and is, in any event, unsupported by the evidence in this case. Grievant is correct in his claim that the tenure criteria and explanatory guidelines do not expressly mandate that faculty publications appear in recognized professional journals in order to be considered under the alternative requirements to the terminal degree criterion. However, the provisions of the bargaining agreement do not prohibit the Colleges from drawing such a distinction. In applying the tenure criteria the Colleges have apparently determined as a matter of policy that greater weight is to be accorded writings which are published in

recognized professional journals. The Board properly ruled that this decision is within the broad discretion of the Colleges and is not arbitrary or discriminatory. Such a decision is rationally related to the goals of higher education, whatever this Court may think of its underlying wisdom, and thus will not be interfered with.

Grievant's second argument on this issue is also without merit. He asserts that the publishing distinction applied by the Colleges is irrational and unfair. He cites the testimony of the professor who had been granted tenure in support of this claim. The latter testified at length that in his opinion grievant's articles were of the same quality as those he had himself published in American Meteorological Society (AMS) recognized journals. Essentially, it is on this testimony that grievant rests his challenge to the validity of the distinction made by the Colleges.

■■ The short answer to this argument is that since there is a legitimate basis for the Colleges to distinguish publications which appear in recognized journals from those which do not, we will not second-guess the decision to draw this distinction. In those journals recognized by the AMS there exists a formal peer review process which evaluates writings and determines eligibility for publication. No such stringent review occurred before grievant was entitled to publish articles in the journal he himself created. On this basis alone, the Colleges were entitled to distinguish Woodall's accomplishments from grievant's. Accordingly, the Board did not err in concluding that the denial of tenure to grievant was not discriminatory under the collective bargaining agreement.

Grievant's final claim is that the Board erred when it excluded evidence on the issues of age and sex discrimination on the ground that those issues were not raised in Step I of the grievance procedure. We have carefully considered the arguments on this point and are firmly convinced that the Board's ruling must stand.

Article XIX of the agreement establishes the steps to be followed in processing a grievance. Step I requires that:

A. The grievant shall submit his grievance in writing to the designated College official stating the *nature of*

*the grievance including relevant facts, the provision(s) of the agreement alleged to have been violated,* where relevant, and the adjustment sought. (Emphasis added.)

Paragraph 6 of that article bars the Board from considering issues not raised in Step I of the procedure. See *Vermont State Colleges Faculty Federation* v. *Vermont State Colleges,* 139 Vt. 329, 428 A.2d 1110 (1981).

█ In this case, grievant in his Step I letter neither mentioned age or sex discrimination nor cited the appropriate article (IV) of the agreement which prohibits such practices. Instead, he complained generally about possible "discriminatory application of a rule or regulation." This was inadequate pleading under the plain terms of the bargaining contract. Furthermore, the written grievance was not, as grievant now argues, subject to oral modification at the Step I hearing. To permit such post hoc amendment would effectively alter the terms of the parties' contract. Finally, we reject grievant's claim that it was incumbent on the Colleges to firmly rule out discussion of the age and sex discrimination issue at the preliminary grievance hearings in order to preserve its objection to consideration of those issues before the Board. The fact that the Colleges may have permitted grievant to discuss his claim of age and sex discrimination at the Step I hearing did not constitute a waiver of the provisions of article XIX. Grievant failed to comply with the express terms of the bargaining contract—he cannot now complain that he was denied a full and fair hearing on his grievance.

*Affirmed.*