## Jan Lewandoski and the Vermont State Colleges Faculty Federation, AFT Local #3180, AFL–CIO v. Vermont State Colleges

[457 A.2d 1384]

No. 524-81

Present: Billings, Hill, Underwood and Peck, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed February 7, 1983

*Michael T. Schein* of *Hoff, Wilson, Powell & Lang, P.C.,* Burlington, for Plaintiffs-Appellants.

*Doremus, Congleton, Jenkins & Sutherland,* Essex Junction, for Defendant-Appellee.

Billings, J. Grievant Jan Lewandoski was formerly an assistant professor of political science at Johnson State College [hereinafter "Johnson"], one of the defendant Vermont State Colleges. On December 17, 1980, the president of Johnson informed grievant that he had been denied tenure due to his failure to acquire either a terminal degree in his major teaching field, or an approved substitute. Grievant appropriately grieved his tenure denial, and appealed the negative result to the Vermont Labor Relations Board [hereinafter "Board"]. 3 V.S.A. §§ 926, 928. The Board heard evidence over the course of three days, sitting each time with a quorum of two members present. Although none of the three member Board attended more than two sessions, both parties agreed to go forward without objection, on the understanding that all three Board members would read the transcripts of testimony they missed and review the entire record prior to rendering a decision. After such review, the Board upheld the tenure denial, and this appeal followed.

Grievant briefs three arguments for our consideration: (1) that since no single member of the Board attended all three days of hearing, the Board was improperly constituted, thus lacking subject matter jurisdiction and depriving grievant of due process of law; (2) that grievant was caught in a major policy shift with insufficient time to comply, and thus was arbitrarily denied tenure by strict application of new criteria which differed substantially from prior policy; and (3) that even if application of the new policy criteria were proper, the college president arbitrarily refused to consider grievant's "professional experience, attainment, and/or training" as a substitute for his lack of a terminal degree. We will consider each of these arguments in turn.

Grievant first contends that because of the failure of at least one Board member to attend all three hearings, the Board lacked subject matter jurisdiction, and thus was without legal authority to dismiss his claim. In support of this contention,

he cites the case of *Suitor* v. *Suitor*, 137 Vt. 110, 400 A.2d 999 (1979) (per curiam), and the rule that "[p]ublic administrative bodies have only such adjudicatory jurisdiction as is conferred on them by statute, with nothing presumed in favor of their jurisdiction." *Gloss* v. *Delaware & Hudson R.R.*, 135 Vt. 419, 422, 378 A.2d 507, 509 (1977) (citing *In re Lake Sadawga Dam*, 121 Vt. 367, 370, 159 A.2d 337, 339 (1960)).

In the *Suitor* case we dealt with the validity of a superior court contempt order which had been issued solely by the presiding judge. The assistant judges participated neither in the hearing nor in the decision. Under the statutes controlling at that time, a quorum of two judges was required for superior court actions, 4 V.S.A. § 111(a), unless two of the judges were disqualified. 4 V.S.A. § 112. As there had been no showing that the assistant judges were disqualified, we held that the presiding judge alone did not constitute a statutory court, that the court therefore lacked subject matter jurisdiction over the cause, and thus that the order was without basis in law.

A review of the statutory scheme controlling the composition and authority of the Vermont Labor Relations Board reveals that grievant's reliance on the *Suitor* case is misplaced, for the Board has complied with its authorizing legislation. Under 3 V.S.A. § 921(a), the Board is composed of three members, and it is vested with authority by 3 V.S.A. § 926 to hear and determine grievances. As no mention is made in Title 3 of the number of Board members constituting a quorum with authority to act, resort must be had to those statutes governing general rules of construction. *Becker* v. *Selectmen of Bennington*, 123 Vt. 6, 10, 178 A.2d 399, 402 (1962). Section 172 of Title 1 provides that when joint authority is given to three or more persons, the concurrence of a majority of such number shall be sufficient and required for the proper exercise of authority. Nowhere in this statutory scheme is there support for the argument that the two person quorum must actually be composed of the *same* two persons in proceedings taking place over time.

In the present case, it is uncontested that at each of the three hearings, a quorum of the Board was present. The

authority of the Board to conduct the hearings was therefore properly exercised in keeping with 1 V.S.A. § 172 and 3 V.S.A. §§ 921 (a), 926. After the hearing, each Board member reviewed the entire record, with special attention to those portions of the transcript containing testimony he had missed. All three members participated in the decision and signed opinions and the resulting order. Thus, even "with nothing presumed in favor of their jurisdiction," *Gloss* v. *Delaware & Hudson R.R.*, *supra*, 135 Vt. at 422, 378 A.2d at 509, the Board in this case was statutorily constituted and had the legal power "to deal with the subject matter of this controversy." *Suitor* v. *Suitor*, *supra*, 137 Vt. at 111, 400 A.2d at 100. See also *In re Burlington Electric Department*, 141 Vt. 540, 450 A.2d 1131 (1982).

However, our holding that there was no jurisdictional defect impairing the Board's authority does not resolve the question of a due process violation, which grievant asserts on the basis of the Board's shifting composition throughout the hearing process. Grievant raised this question, as well as the jurisdictional issue, with the Board below by way of a motion for rehearing. While rejecting the jurisdictional argument, the Board apparently found a due process violation, but further found grievant to have waived the issue:

> [W]e do believe there is a due process question here. Grievant has the right to have two of the same members of the Board hear this case throughout. However, Grievant waived this right by agreeing to go forward with the hearings in the absence of the full Board with the understanding that all three Board members would participate in the decision after reviewing the entire record and reading the transcript of the testimony they missed. We believe a due process right can be willingly and knowingly waived, as it was here, and this distinguishes it from a jurisdictional defect.

Grievant contends that since his advocate at the hearing was a union representative, not an attorney, the apparent waiver was ineffective. However, we need not determine the waiver's validity, for we hold that, while such irregularities in Board hearings are not to be encouraged, and while it is

obviously preferable that the Board's membership remain consistent throughout the hearings in any one cause, such a constant is not required by the due process clause. Therefore, on the facts of this case there is no due process violation.

The essence of grievant's due process claim is that one who has not "heard" the testimony is precluded from making a fair factual determination, and thus may not constitutionally adjudicate the cause. This is a case of first impression for this Court, and to aid in our determination grievant directs our attention to the following cases from other jurisdictions: *Miskovich* v. *City of Helena,* 170 Mont. 138, 551 P.2d 995 (1976); *Chanaberry* v. *Gordy,* 200 Tenn. 220, 292 S.W.2d 18 (1956) ; *McAlpine* v. *Garfield Water Commission,* 135 N.J.L. 497, 52 A.2d 759 (1947); *Perkins* v. *School Committee of Quincy,* 315 Mass. 47, 51 N.E.2d 978 (1943) ; *Hawkins* v. *Common Council,* 192 Mich. 276, 158 N.W. 953 (1916). Our research indicates that these cases, several of which are factually distinguishable, in any event represent a minority view which we are not inclined to follow.

■ The source of the rule relied on by grievant, that "the one who decides must hear," is the Supreme Court case of *Morgan* v. *United States,* 298 U.S. 468 (1936). That case concerned whether transcribed testimony taken by a trial examiner might constitutionally serve as the basis for findings and a rate setting order by the Secretary of Agriculture, who had not actually heard the evidence. Although in that case the Court remanded for a new hearing in compliance with authorizing legislation, it went on to indicate that in many administrative proceedings, decisions could permissibly be based solely on a considered review of the transcribed record and the evidence presented. The Court held that "[e]vidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. . . . [T]he officer who makes the determinations must consider and appraise the evidence which justifies them." *Id.* at 481–82.

In *NLRB* v. *Stocker Mfg. Co.,* 185 F.2d 451 (3d Cir. 1950), the court relied on *Morgan* and *NLRB* v. *Mackay Radio & Telegraph Co.,* 304 U.S. 333 (1938) (holding the NLRB could act solely upon transcribed records and oral arguments, with-

out the benefit of a report by the trial examiner who heard the testimony). In so doing, the court held that:

> The doctrine of these cases clearly permits the Board to make its findings and predicate its orders upon the written record without hearing the witnesses testify or availing itself of findings and recommendations prepared by the officer who heard and observed the witnesses testify. Under the Mackay case, due process permits dispensing with the hearing examiner's report altogether. The Morgan opinion says that the officer who actually decides the controversy may do so on the basis of evidence taken by an examiner and thereafter sifted and analyzed by some other subordinate. Due process in administrative proceedings of the type now under consideration does not require that the testimony be evaluated by an officer who heard and observed the witnesses.

*NLRB* v. *Stocker Mfg. Co., supra,* 185 F.2d at 453.

Other circuits are in accord. *Estate of Varian* v. *Commissioner of Internal Revenue,* 396 F.2d 753, 755 (9th Cir.), *cert. denied,* 393 U.S. 962 (1968) ("The Supreme Court's statement that '[t]he one who decides must hear' . . . means simply that the officer who makes the findings must have considered the evidence or argument.") ; *Utica Mutual Insurance Co.* v. *Vincent,* 375 F.2d 129, 132 (2d Cir.), *cert. denied,* 389 U.S. 839 (1967) ("Nothing in [Morgan] suggests that the decider must actually hear the witnesses or be furnished a report on their credibility; the thrust is quite the opposite.") ; *Southern Garment Mfrs. Ass'n* v. *Fleming,* 122 F.2d 622, 626 (D.C. Cir. 1941) ("While 'the one who decides must hear,' it must be remembered that 'hear' is used in the artistic sense of requiring certain procedural minima to insure an informed judgment by the one who had the responsibility of making the final decision and order.").

■ Admittedly, there is less agreement among the courts as to the precise question presented here: whether the decision of an administrative tribunal is invalidated by the participation of one or more members who were absent from a hearing at which evidence was taken. However, we are satisfied that the majority of cases hold that in order to comply

with due process it is only required that members not present when testimony is taken review the testimony before participating in the decision. 2 K. Davis, Administrative Law Treatise §§ 11.01–11.04 (1958); see, e.g., *McGraw Electric Co.* v. *United States,* 120 F. Supp. 354 (E.D. Mo.), *aff'd,* 348 U.S. 804 (1954); *Rothkoff* v. *Ratner,* 104 Misc. 2d 204, 428 N.Y.S. 2d 138 (1980); *Bruns* v. *Department of Registration & Education,* 59 Ill. App. 3d 872, 376 N.E.2d 82 (1978); *State Board of Funeral Directors* v. *Cieslak,* 24 Pa. Commw. 315, 355 A.2d 590 (1976); *Clairborne* v. *Coffeyville Memorial Hospital,* 212 Kan. 315, 510 P.2d 1200 (1973). See generally, Annot., 18 A.L.R.2d 606 (1951). We therefore follow the majority rule, and hold that on the facts presented here, where a quorum of administrative officers has been present throughout, and where the whole tribunal has carefully reviewed the record prior to rendering a decision, grievant was not denied due process of law.

Grievant next raises two substantive challenges to his tenure denial. First, he argues that such denial was arbitrary because it was based on newly promulgated tenure criteria which differed substantially from the previous policy. Second, he contends that even if evaluation under the new criteria were appropriate, the college president arbitrarily ignored the criteria's plain language, and thus erroneously applied them in his case.

■ At the outset we note that the scope of our review is extremely limited, as was the Board's. As we have stated before:

It is irrelevant whether we would or would not choose to grant tenure to grievant. The decision has not been left to this Court or the Board, but is instead vested in the College. The [collective bargaining] agreement itself expressly mandates that the Board is to dismiss any grievance involving denial of tenure unless the reasons offered in support thereof represent an "arbitrary or discriminatory" application of tenure criteria.

*Fairchild* v. *Vermont State Colleges,* 141 Vt. 362, 365, 449 A.2d 932, 934 (1982). The United States Supreme Court has defined an "arbitrary" decision as one "[f]ixed or arrived at

through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance . . . ." *United States* v. *Carmack,* 329 U.S. 230, 243–44 n.14 (1946) (quoting *Webster's New International Dictionary* 138 (2d ed. 1945)). Thus, we are limited to a determination of whether the final authority vested in college presidents to make tenure decisions, *Hackel* v. *Vermont State Colleges,* 140 Vt. 446, 438 A.2d 1119 (1981), was exercised arbitrarily in this case. See *Fairchild* v. *Vermont State Colleges, supra; D'Aleo* v. *Vermont State Colleges,* 141 Vt. 534, 450 A.2d 1127 (1982).

It is uncontested that the sole reason grievant was denied tenure was his failure to meet the "academic credentials" criterion in the 1980 Tenure Criteria. That criterion is defined as follows: "Candidates for a reappointment which confers tenure must have a terminal degree or an approved substitute (as defined in this policy) in their major teaching fields. . . ." The policy goes on to allow "professional experience, attainment and/or training" to be considered as a substitute for the degree. Grievant did not have a Ph.D., the terminal degree in his field, and was considered by the president of Johnson not to have an acceptable substitute.

On appeal grievant argues that the 1980 criteria represented a substantial tightening of standards over the 1976 criteria, especially with regard to the "academic credentials" requirement. His argument is two-fold: first, that by the revised language of the new criteria, substitutes for the Ph.D. were to be the exception rather than the rule; second, that the evidence before the Board tended to show that the new policy was passed in order to "tighten up" the prior practice of regularly allowing degree substitutes. In addition, he argues that under the language of the new criteria, several of his accomplishments were precluded from consideration as degree substitutes, which would have been considered under the earlier language.[1]

---

[1] The Board found that the 1976 criteria required "a terminal degree in major teaching field or significant professional, artistic or scholarly accomplishment . . . defined as those accomplishments in scholarship, professional public service, business, industry, the fine and performings arts and crafts which contribute to the goals of higher education."

The simple answer to these contentions is that they are contrary to the findings of the Board, which we will reverse only when clearly erroneous. *In re Muzzy*, 141 Vt. 463, 470, 449 A.2d 970, 973 (1982); *In re Carlson*, 140 Vt. 555, 560, 442 A.2d 57, 60 (1982). The Board, after carefully sifting through the evidence before it, stated in its opinion that "the 1976 and 1980 criteria were not substantially different in what was required to meet the Academic Credentials criterion, and Grievant was warned as early as 1977 what was required of him to meet such criteria." Further, the Board concluded from the testimony that the 1980 criteria merely codified the practice already in effect at Johnson under the 1976 criteria, which was to scrutinize strictly substitutes for the terminal degree requirement. Finally, the Board found that even under the 1976 criteria, the president would not have considered grievant's accomplishments as satisfying the degree substitute.

Grievant argues that such conclusions are unsupported by the findings, some of which are phrased as recitations of testimony. It is true that findings which merely recite testimony are improper and, without more, are to be disregarded by reviewing courts. *Harrington* v. *Department of Employment Security*, 142 Vt. 340, 346, 455 A.2d 333, 337 (1982); *In re J. S., Juvenile*, 139 Vt. 6, 13, 420 A.2d 870, 874 (1980); *Krupp* v. *Krupp*, 126 Vt. 511, 514, 236 A.2d 653, 655 (1967). However, in this case the Board did make appropriate findings of fact, although they included them in the body of their opinion. Where, as here, proper findings supported by the record are mislabeled and included as "conclusions," this Court will not view the mislabeling as a fatal defect. *Harrington* v. *Department of Employment Security, supra*, 142 Vt. at 346, 455 A.2d at 337; *Rice* v. *Martin*, 139 Vt. 104, 105, 323 A.2d 849, 850 (1980) (per curiam).

A review of the record indicates that the Board's findings are amply supported. A comparison of the language of the 1976 and 1980 criteria reveals that the two policies were not so different in what was required to meet the "academic credentials" criterion as to hold unfair or capricious the application of the 1980 policy to grievant. Moreover, the evi-

dence indicates that even under the 1976 criteria, the president had consistently been scrutinizing the credentials of those candidates offering a substitute for the terminal degree requirement. This policy did not change under the 1980 criteria. Nor can grievant claim insufficient notice for failure to comply. In 1977, and again in 1978, grievant's division chairpersons warned him that it would be necessary for him to complete his Ph.D. in order to receive tenure under the 1976 criteria. In reappointing grievant for the 1978–79 year, the president confirmed this view when he gave grievant the following warning:

> This reappointment is not to be understood as implying a favorable judgment on your qualifications for tenure at Johnson. As you know, a tenure appointment requires the prior possession of a terminal degree or firm evidence of significant growth in scholarly achievement. Although this subject has been treated in various communications between the officers of the college and yourself, your file contains no evidence that you will, in fact, have achieved the prerequisites of scholarly development without which you cannot be tenured at Johnson . . . . I, therefore, strongly recommend that you and your Division Chairman discuss an acceptable timetable for successfully obtaining the credentials required for award of tenure at your earliest convenience.

Grievant never executed such a timetable. Thus, it cannot be said that he was harmed by the application of the 1980 criteria, or that such application was "arbitrary" under Article XXIV of the parties' collective bargaining agreement.

Grievant's final argument is that even if it were appropriate to use the 1980 criteria, nevertheless the president arbitrarily interpreted and misapplied those criteria in his case. Specifically, he contends that the president's improper interpretation prevented him from correctly considering three of grievant's accomplishments: his work as a zoning administrator and selectman in the town of Stannard, an article which he published on a subject outside his major teaching field, and his progress toward his Ph.D.

In *Fairchild* v. *Vermont State Colleges, supra,* 141 Vt. at 365–66, 449 A.2d at 934, we recognized that under the collec-

tive bargaining agreement, the president has "significant leeway in the interpretation of [the tenure] criteria," and that we will interfere with such judgment only when it is exercised without rational basis or arbitrarily. "In cases such as this one the Court must tread with care lest we succumb to the temptations, which may occasionally beset us, to substitute our judgment for judgment made by others presumably best qualified, through the experience and expertise we do not have, as well as primary authority, to make them." *Id.* at 368, 449 A.2d at 935. In this case, the findings and record below indicate that the president's interpretations were careful and considered, and although grievant disagrees with them, they were certainly not arbitrary.

The grievant sought to have his political work in Stannard considered as "professional experience," and thus counted toward substitution for the Ph.D. Instead, the president reasonably included those experiences under the category of "community service," the third tenure criterion. We will not disturb that judgment. As to the published article, grievant would have it, too, counted toward the Ph.D. substitute, and he contends that under the 1976 criteria it would have been so considered. However, there is no evidence in the record to support this assertion. Instead, the record reveals that under both policies, the president was free to consider the publication under either the second criterion ("professional growth" in 1976, "scholarly and professional growth" in 1980) or as a degree substitute. We will not interfere with that decision.

 Finally, grievant urges that his progress toward the Ph.D., including his coursework and doctoral research, should have been considered as a substitute for the degree as well. However, the Board found both that the president would not consider progress alone, absent publications arising out of the research, and that he would just as quickly have discounted such progress as a degree substitute under the 1976 criteria. Thus, it cannot be said that the president abused his discretion and applied the 1980 criteria arbitrarily.

*Judgment affirmed.*