## Grievance of David Towle

[665 A.2d 55]

No. 94-207

Present: Allen, C.J., Gibson, Dooley and Johnson, JJ., and Cook, D.J., Specially Assigned

Opinion Filed August 25, 1995

*David C. Sleigh* and *David J. Williams* of *Sleigh & Williams*, St. Johnsbury, for Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *Timothy B. Tomasi* and *F. Michael Seibert*, Assistant Attorneys General, Montpelier, for Appellee.

**Gibson, J.** Grievant David Towle appeals a decision of the Labor Relations Board upholding his dismissal from employment with the Department of Corrections for engaging in gross misconduct. We affirm.

I.

On August 27, 1991, J.P., a female probation and parole officer, filed a sexual harassment complaint against grievant. At that time, J.P. told District Director Greg MacDonald that grievant had physically forced her to masturbate him and perform fellatio on him on August 22 while he drove her and her two children to a doctor's appointment. Grievant, a probation and parole field supervision officer, was not on duty at the time of this incident. J.P. also complained that grievant sexually harassed her at work by fondling and kissing her, and that she was afraid of him. Following J.P.'s complaint, MacDonald and Area Manager James Spinelli began an investigation and suspended grievant with pay.

Spinelli and MacDonald interviewed grievant on September 13, 1991. Grievant admitted the acts but claimed that he did not force J.P.

to perform them. He told the investigators that there were five other occasions between fall 1990 and late spring 1991 when he and J.P. had engaged in fellatio while he was on duty. Two of the incidents occurred in a state office building and three took place in a state vehicle while grievant was supposed to be performing field checks on parolees.

When the investigators interviewed J.P., she maintained that she did not consent to the sexual acts. J.P.'s therapist, Michael Watson, was present during the interview. He told Spinelli and MacDonald that J.P. had post-traumatic stress disorder (PTSD) caused by childhood sexual abuse and that it prevented J.P. from being able to effectively refuse to engage in sexual acts when pressured. Watson stated that J.P. also suffered from dissociative disorder, which caused her to disassociate herself mentally from sexual acts performed under pressure even though yielding physically. Based upon the evidence obtained from grievant, J.P. and others, Spinelli concluded that grievant had engaged in sexual acts while on duty, that the acts were not mutually consensual, and that grievant had sexually harassed J.P. Spinelli further concluded that J.P.'s PTSD and dissociative disorder plausibly explained her apparent inability to rebuff grievant's repeated advances. Spinelli reported these conclusions in writing to his superior, Richard Turner, Director of Corrections Services.

On November 4, 1991, Turner told grievant that he was contemplating dismissing him for three reasons: (1) on five occasions, grievant had oral sex either in the office or a state vehicle while on duty, (2) his behavior represented a pattern of sexual harassment of J.P., and (3) he had made sexual advances toward another woman, T.H., while he was on duty. Pursuant to the notice of potential dismissal, Turner met with grievant to give him an opportunity to respond to the allegations. At this meeting, Turner refused grievant's request to view J.P.'s mental health diagnosis, maintaining that those records were confidential.

By letter of December 16, 1991, Turner notified grievant that he was dismissed from employment effective December 17, 1991. The discharge letter stated that grievant was fired for "engag[ing] in sexual acts, and/or sexually inappropriate behavior with a female Department of Corrections employee, during the period from about October 1990 to August of 1991, while either in a state office or a state

vehicle."[1] The letter stated that such acts were considered "gross misconduct and sufficient cause to warrant [grievant's] dismissal." Because it was unclear that grievant knew J.P. did not consent to the advances, Turner did not base his decision on J.P.'s allegations of sexual harassment.

Grievant filed a grievance with the Board. The Board found that the State acted reasonably in dismissing grievant and upheld the disciplinary action. In grievant's appeal to this Court, he contends that: (1) the State did not have just cause for dismissing him; (2) firing him but not J.P. was discriminatory treatment proscribed by the state employees' collective bargaining agreement; (3) the Board erred by allowing hearsay testimony; and (4) the State did not afford him an adequate opportunity to defend himself prior to his termination.

## II.

We treat the Board's decisions with deference. See *In re Vermont State Employees Ass'n*, 139 Vt. 501, 506, 431 A.2d 474, 477 (1981). We presume that the Board's actions are correct and reasonable, see *International Ass'n of Firefighters Local 2287 v. City of Montpelier*, 133 Vt. 175, 178, 332 A.2d 795, 797 (1975), and we will uphold the Board's order if it is supported by the findings. *In re Merrill*, 151 Vt. 270, 273, 559 A.2d 651, 653 (1988).

The primary issue presented by this case is whether engaging in sexual acts while at work is just cause for immediate dismissal. Grievant argues that performing sexual acts with a co-worker during his shift and in a state office building or state vehicle is not gross misconduct, and therefore, the State lacked just cause for terminating his employment. We disagree.

Under the state employees' collective bargaining agreement, permanent state employees, such as grievant, may not be fired without just cause. In most misconduct cases, the State is required to follow a course of progressive discipline prior to dismissal. The agreement provides that, in cases of gross misconduct, the State may bypass progressive discipline. As we have stated, "[P]rogressive discipline is not inherent in the concept of just cause." *In re Brooks*, 135 Vt. 563, 569, 382 A.2d 204, 208 (1977).

"Just cause" is "some substantial shortcoming detrimental to the employer's interests, which the law and a sound public opinion

---

[1] The charge that grievant harassed T.H. was also in the dismissal letter. Grievant denied that he harassed T.H. and denied he was on duty when that incident took place. The State later withdrew the charge, and it is not relevant to this appeal.

recognize as a good cause for . . . dismissal." *Id.* at 568, 382 A.2d at 207 (citation omitted). A discharge for just cause will be upheld if it meets two criteria: (1) it is reasonable to discharge the employee because of misconduct, and (2) the employee had notice, express or fairly implied, that such conduct would be grounds for discharge. *Id.* at 568, 382 A.2d at 207–08. In discipline cases, the just cause analysis "should center upon the nature of the employee's misconduct." *In re Morrissey*, 149 Vt. 1, 13, 538 A.2d 678, 686 (1987).

To evaluate the reasonableness of grievant's dismissal, the Board applied the factors laid out in *In re Colleran*, 6 V.L.R.B. 235, 268–69 (1983), stating:

> 1) the nature and seriousness of the offense, and its relation to the employee's duties, position and responsibilities, including whether the offense was frequently repeated; 2) the effect of the offense upon supervisors' confidence in the employee's ability to perform assigned duties; 3) the clarity with which the employee was on notice that the conduct was prohibited by the employer; 4) the consistency of the penalty with those imposed upon other employees for the same or similar offenses; 5) mitigating circumstances surrounding the offense; 6) the employee's past disciplinary and work record; 7) the potential for the employee's rehabilitation; and 8) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

Focusing on factors (1) through (3), the Board found that the State's decision to fire grievant constituted fair punishment for the type of malfeasance involved.

■ Grievant's misconduct was serious. Performing sexual acts while at work violates any reasonable definition of acceptable employee behavior. Grievant knew that his behavior was inappropriate. The acts were significantly detrimental to the employer's interest. Field officers such as grievant spend much of their work time in the community checking on parolees who are under the Department's supervision. The officers have a great deal of independence because their work is performed with little direct oversight. Grievant's behavior destroyed the trust grievant's superiors had placed in him that he could properly perform his assigned duties. Further, his actions risked the reputation of the Department of Corrections. As

grievant concedes, public knowledge that Corrections employees engage in sexual conduct while on duty could damage the Department's reputation in the community. Though one incident of gross misconduct may create just cause for summary dismissal, the fact that prohibited acts are repeated compounds the seriousness of the offense. See *Brooks*, 135 Vt. at 568, 382 A.2d at 207. Here, the repetition of the prohibited acts showed grievant's disregard for his employer's credibility with the public.

The State did consider grievant's record of satisfactory work performance and that he had not been disciplined before; however, the Board found the State was reasonable to conclude that these facts did not outweigh the other factors. Repetition of acts that grievant knew to be forbidden justified the State's judgment that grievant was not a good candidate for either rehabilitation or alternative forms of discipline, and justified his discharge.

Grievant claims he had no notice that consensual relationships between employees could be cause for dismissal, but he mischaracterizes the grounds for his dismissal. He was not fired for fraternizing with a co-worker. He was dismissed for having sex while at work, both at his place of employment and in a state vehicle.

Grievant also complains he had no notice because the State had no written policy proscribing the acts in which he engaged. Notice need not be explicit but may be fairly implied. *Brooks*, 135 Vt. at 568, 382 A.2d at 208. We follow an objective standard for implied notice: whether the employee should have known the conduct was prohibited. *Id.* Having sex on the job is an activity employees should know is prohibited by employers absent explicit warnings. While the Department did not have a written rule proscribing sexual acts while on duty, the State could fairly expect its employees to know such conduct is forbidden, and grievant testified that he knew it was misconduct for which he could be disciplined. Grievant argues that, because he did not know the discipline might be dismissal, the State could not fire him but could impose only another sanction. Knowledge that certain behavior is prohibited and subject to discipline is notice of the possibility of dismissal. *In re Gorruso*, 150 Vt. 139, 148, 549 A.2d 631, 636–37 (1988) (notice proscribed sexual harassment of co-worker); see also *In re Carlson*, 140 Vt. 555, 560, 442 A.2d 57, 60 (1982) (notice that fraud is proscribed can never be vitiated). Because grievant knew the behavior was forbidden, he had fair notice that he risked dismissal for engaging in these acts.

We conclude that the Board's finding that just cause existed for grievant's dismissal is supported by the record.

## III.

■ Grievant contends that, even if the State had just cause to dismiss him, the Board erred in failing to find that the State violated its employment agreement because it treated J.P. differently from him, although they had engaged in the same acts.[2] The Board found, however, that mitigating circumstances justified treating the cases differently. We agree.

As a general rule, the State should treat like cases alike. We have defined discrimination as the "'unequal treatment of individuals in the same circumstances under the applicable rule.'" *Fairchild v. Vermont State Colleges*, 141 Vt. 362, 367, 449 A.2d 932, 935 (1982) (quoting *Nzomo v. Vermont State Colleges*, 136 Vt. 97, 102, 385 A.2d 1099, 1102 (1978)). Article 14, § 1(b) of the state employees' contract reflects a concern for fairness by providing that the State will apply discipline "with a view toward uniformity and consistency." While this language does not require absolute consistency, it does reflect an important factor for the State to consider when dispensing discipline.

Corrections Department managers did consider disciplining J.P., but determined that mitigating circumstances warranted no discipline. J.P. contended that she was not a willing participant in the sex acts; her contention was supported by her therapist. The State sought independent verification of J.P.'s condition from a psychiatrist specializing in the treatment of sexual abuse. The psychiatrist concluded that the diagnosis of J.P.'s mental condition was consistent with the events described in the investigative report. While grievant was not discharged for any offense related to a nonconsensual sexual act, the Board found that the evidence showing that J.P. did not consent was sufficient mitigation to justify the State's decision not to discipline her. Thus, the State had reasonable grounds for concluding that J.P. and grievant were subject to different circumstances, and these differences justified the State's actions. See *Fairchild*, 141 Vt. at 367, 449 A.2d at 935.

---

[2]To the extent grievant bases his discrimination claim on any theory other than the state employees' agreement, the argument is inadequately briefed and will not be considered by the Court. See V.R.A.P. 28(a)(4); *Johnson v. Johnson*, 158 Vt. 160, 164 n.*, 605 A.2d 857, 859 n.* (1992).

## IV.

█ J.P. did not testify before the Board. Grievant objected to third-party testimony recounting J.P.'s description of the sexual acts. Grievant argues that, by adopting V.R.C.P. 43(a) via Board Rule 12.1, the Board must follow the Vermont Rules of Evidence, which limit the use of hearsay.

Pursuant to its statutory rulemaking authority, see 3 V.S.A. § 928(a), the Board promulgated Rule 12.1, which adopts as much of V.R.C.P. 43(a) "as [is] not inconsistent with the laws of the State of Vermont." Rule 43(a) provides that "[i]n all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules, the Vermont Rules of Evidence, or other rules adopted by the Supreme Court." The Board's rulemaking authority is limited, however, by 3 V.S.A. § 928(b)(3), which requires that all hearings of the Board be informal and not subject to the rules of evidence unless both parties agree otherwise. Hence, the Board interpreted Rule 12.1 as "simply setting forth the general rule that during hearings, testimony of witnesses will be taken orally in open court."

We give deference to the Board's interpretation of its own regulations; unless the Board acts unfairly to restrict one party's rights, its evidentiary rulings will be upheld. *Fairchild*, 141 Vt. at 366–67, 449 A.2d at 934. To interpret Board Rule 12.1 as barring the introduction of all hearsay evidence, as grievant suggests, would be inconsistent with the mandate of the General Assembly that the Board's hearings be informal and not subject to the rules of evidence absent an agreement of the parties.

Moreover, the central allegation in this case — that grievant participated in sexual misconduct — was established by the grievant's own admissions. In his testimony, he described in detail the sexual acts and admitted that he knew it was wrong and that he could be disciplined. The Board's interpretation of its rules was correct, and the evidence it allowed did not unfairly restrict grievant's rights.

## V.

█ Finally, grievant asserts that the State's refusal to provide him with J.P.'s medical records hampered his defense at the pretermination hearing. The Board found that the meeting with Turner afforded grievant a legally sufficient opportunity to present his version of the facts prior to dismissal.

The collective bargaining agreement vests state employees with a property interest in their employment, thereby raising due process considerations when they are faced with the prospect of discharge. *In re Muzzy*, 141 Vt. 463, 472, 449 A.2d 970, 974 (1982). Due process dictates that public employees are "entitled to oral or written notice of the charges" as well as "an explanation of the employer's evidence" and an opportunity for the employee to present "the other side of the story" prior to dismissal. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). To require more prior to the employee's discharge "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 546. The state employees' collective bargaining agreement requires a pretermination opportunity to respond similar to a so-called *Loudermill* hearing.

The purpose of a pretermination hearing is to determine whether reasonable grounds exist to believe that the charges against the employee are true and support the proposed actions. *Id.* at 546–47. The hearing need not be elaborate; in general, "something less" than a full evidentiary hearing is all that is required. *Id.* at 545. The Board found that the procedures the State followed in this case satisfied due process. Grievant was notified that the State was considering terminating his employment, was given a description of the evidence, and had the opportunity to present reasons why the disciplinary action should not be taken. This procedure satisfied the *Loudermill* requirements.

Grievant has not shown anything that would have required the State to turn over another employee's medical records at the pretermination hearing. Indeed, J.P.'s medical records have no bearing on the egregiousness of grievant's conduct. The State was required to explain the relevant evidence, and that was done. A pretermination hearing does not replace the full evidentiary hearing before the Labor Relations Board. Grievant was given a full opportunity to conduct discovery concerning J.P.'s medical condition in the Board proceeding. He can point to no prejudice from failing to have this opportunity earlier in the process. The Board correctly ruled that due process was satisfied at the pretermination hearing.

*Affirmed.*