**Manuel COSTA et al.**

v.

**Richard GAGNON et al.**

**No. 80–162–M.P.**

Supreme Court of Rhode Island.

Jan. 26, 1983.

Leary & Holland, Jeremiah R. Leary, Stetson W. Eddy, Tiverton, Corcoran, Peckham & Hayes, Kathleen Managhan, Newport, for petitioners.

Thomas T. Brady, Inc., Thomas T. Brady, Tiverton, for respondents.

## OPINION

MURRAY, Justice.

This matter is before us on a petition for certiorari to review a judgment of the Superior Court reversing a decision of the Zoning Board of Review of the Town of Tiverton (the board), which granted the petitioner's application for a variance. We granted the petition and issued the writ on

1. R–15 is a high-density residential zone.

May 22, 1980. *Costa v. Gagnon,* R.I. 419 A.2d 850 (1980). In response thereto, transcripts and exhibits relevant to this matter have been certified to this court.

The record indicates that on September 1, 1976, a complaint was filed in Superior Court for Newport County, pursuant to G.L.1956 (1980 Reenactment) § 45–24–20, by owners of property abutting that of defendants Manuel and Olinda S. Costa. The abutters claimed to be aggrieved by an August 4, 1976 decision of the board which recognized the autobody repair shop on the Costas' land as a legal nonconforming use and granted the Costas a variance to move the body shop from the building in which it had been housed into a larger building on the premises.

In 1975, the Costas sought a variance from Article II, Section 8(g) of the Zoning Ordinance, to operate an auto body shop in an R–15 [1] zone. At an August 9, 1975 hearing Mr. Costa explained that he operates a chicken farm and a store on the property. He further testified that he was preparing to "phase out his chicken farm" gradually and that he would "like to set his sons up in business." The minutes of the hearing show that his younger son had done some auto-body-repair work periodically for the preceding five years although he had not done such work as a business. Mr. Costa also told the board that he had not considered the property for residential use because "one third of the land was too low; one third was on ledge; and only one third, where he presently lives, was good." Finally, Mr. Costa also expressed doubt that "it would be possible to get a satisfactory perc test."

The board denied the Costas' petition for a variance on August 9, 1975. In its decision, the board stated that:

"insufficient evidence was presented by petitioner of inability to use his land in a way that conformed with the Zoning Ordinance, and noted that petitioner has a valid non-conforming chicken farm at

said 595 Fish Road, which will be in operation for at least four more years. Thus petitioner uses at present, and will continue to use, said property as a farm, and should not, for reasons of hardship, be allowed to operate an auto body shop on the same lot."

In spite of this decision, the Costas filed a second petition with the board less than one year later. In this petition they alleged that "since 1960 they have continuously operated a commercial enterprise on the premises for the repair of the bodies of motor vehicles, until March 17, 1976 when they were ordered by the Building Inspector of the Town of Tiverton to cease and desist from the body repair enterprise." The Costas requested in a July 2, 1976 petition:

"1. That the existing building which houses the auto body repair shop be declared a legal nonconforming use, which existed prior to the passage of the Zoning Ordinances in Tiverton, Rhode Island, in either 1964 or 1970.

"2. That [the Costas] be allowed to remove the nonconforming body shop to the larger building adjacent thereto, since the removal will not alter the previous nonconforming use of the land involved.

"3. In the alternative, if the Zoning Board of Review feels that it is necessary, [the Costas] hereby request a variance from Article II, Section 8(g) of the Zoning Ordinance to operate a body shop in the larger building and [Costas] allege that such variance should be granted because, owing to conditions especially affecting said parcel of land a literal enforcement of the provisions of the Zoning Ordinance would involve substantial hardship to [the Costas] and no substantial detriment to the public * * *."

At an August 4, 1976 hearing, the Costas claimed that a 1974 state law requiring an auto-body shop to have 2,400 square feet of floor space rendered their building unusable as a body shop because it had only 720 square feet of floor space.[2] Because of this change in the law, Mr. Costa proposed relocating the auto body shop to a building on the property having 3,024 square feet of floor space.

The minutes from this second hearing indicate that Mr. Costa testified that both of his sons were involved in the auto-body-repair business on the property. Both of his sons corroborated this testimony adding that the business was never licensed.[3] A Tiverton resident also testified that the Costas had charged him a fee for the repairs they made on his vehicles.

As a result of the testimony presented at this second hearing, the board found the Costas' auto-body shop to be a legal nonconforming use and granted them a "variance from Article V, Section 5(c) in order to move the auto body shop from the present building to a larger one on the same lot." Essentially, the board felt that Mr. Costa would be unable to continue his business if he were denied his request to move to the larger building because he would be unable to comply with Rhode Island law.[4]

The board's decision was appealed to the Superior Court with the trial justice reversing the board because it was "in violation of statutory and ordinance provisions" and "in excess of authority granted it by statute and ordinance." Specifically, the trial justice decided that "there is no authority in

2. Rules of the Department of Business Regulations, Rule 2—*Administrative Policies.* E. *Space Requirements:*
"Each established place of business shall contain at least 2,400 sq. ft. of heated floor space, with a specific location and common boundaries, where motor vehicles may be properly repaired and serviced. Minimum floor space in all instances shall be interpreted as ground level space and in no instance shall basements, second floors or any upper or lower area be considered in computing the required minimum amount of office, service, or repair room enclosed space."

3. However, the sons' testimony did conflict concerning the number of automobiles repaired in 1976.

4. Rule 2E of the Rules of the Department of Business Regulations.

Article V to permit a nonconforming use to be moved from one building to another" and that "Section 5(c), under which this variance is granted, prohibits the moving of a nonconforming building or structure itself, unless made to conform * * *."

It is a well-established rule that the Supreme Court will sustain the correct judgment of a lower court decision even though it does not accept that court's reasoning. *State v. Ibbison*, R.I. 448 A.2d 728 (1982); *City of Warwick v. Almac's, Inc.*, R.I. 442 A.2d 1265 (1982). For the reasons to follow, we decide that the trial court's judgment was correct even though we disagree with its reasoning.

In zoning law the doctrine of administrative finality bars "successive applications for substantially similar relief unless a substantial or material change of circumstances has occurred in the interval between the two proceedings." *May-Day Realty Corp. v. Board of Appeals of Pawtucket,* 107 R.I. 235, 237, 267 A.2d 400, 401–02 (1970); *Gilman v. Zoning Board of Review of West Warwick,* 103 R.I. 612, 240 A.2d 159 (1968). In *May-Day Realty* this court addressed the question of substantially similar relief and found that a permit request to erect two ten-family apartment houses was not substantially similar to a subsequent request to construct a single apartment building containing a hundred units with underground parking for 125 automobiles. Consequently, we held in *May-Day Realty* that the doctrine of administrative finality was inapplicable.

In the present case, the Costas petitioned the board on two separate occasions and on each occasion they pursued different legal theories.[5] In both petitions the Costas were seeking the board's approval of their auto-body-shop use and expansion of that use. Unlike the clearly dissimilar requests for relief in the *May-Day Realty* case, the Costas requests for relief, we find, were substantially similar in each petition. Furthermore, there was no evidence of a material change in the circumstances. In such a case the doctrine of administrative finality bars the repetitive petition. Therefore, the trial justice, by reason of administrative finality, was correct in reversing the board's granting of the variance.

In light of our decision it becomes unnecessary to consider whether or not the board correctly granted the variance because we have determined that they should have declined to hear the petition in the first instance.

Accordingly, the petition for certiorari is denied and dismissed, the writ previously issued is quashed, and the record certified to this court is remanded to the Superior Court with our decision endorsed thereon.

---

5. In the first petition the Costas requested a variance from article II, section 8(g) of the Tiverton Zoning Ordinance while in their second petition they requested a variance from article V, section 5C of the Zoning Ordinance.