DECISION
Before the Court is an appeal from a decision of the Zoning Board of Review of the Town of Little Compton (Board). Bluff Head Corporation (Appellant) seeks reversal of the Board's March 9, 2001 decision (Second Decision) that the Appellant was collaterally estopped from re-litigating the issue of whether Sakonnet Point Club, Inc. could demolish a nonconforming structure on its property and replace it with a different nonconforming structure. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The Appellant is the owner of property designated as Lot 434-2 on Assessor's Plat 9 located in the Town of Little Compton, Rhode Island. This property is located next to property designated as Lot 434-1 on Assessor's Plat 9 and across the street from property designated as Lot 433 also on Assessor's Plat 9. Lots 434-1 and 433 are owned by Harbor Point Properties, Inc. On June 21, 2000, the Board held a hearing on the Petition of Sakonnet Point Club, Inc. (Petitioner), seeking a special use permit pursuant to § 14-2.5(f) of the Town of Little Compton's Zoning Ordinance (Ordinance) to allow the demolition of a nonconforming structure and replacement with a different nonconforming structure. In its Decision (First Decision), the Board found "that the nonconforming dimensional aspects of the proposed building would be of no greater impact on the surrounding neighborhood than those of the original building." (First Decision at 2.) As such, the Board voted unanimously to grant the special use permit to demolish the existing building and replace it with a new building that would also be nonconforming by dimension.
On June 22, 2000, the Appellant wrote to William Moore, the Building Official for the Town of Little Compton (Building Official), pursuant to G.L. 1956 § 45-24-54 and § 14-1.4(c) of the Ordinance, requesting a determination about certain issues regarding the proposed use by Petitioner of Lots 434-1 and 433. The Appellant posed the following six questions:
 1. Is Sakonnet Point Club entitled to avail itself of Section 14-2.5f of the Zoning Ordinance where the dimensional nonconformance of the building sought to be demolished and rebuilt exists by virtue of a variance granted by the Zoning Board?
 2. Is Sakonnet Point Club required to ask for relief in order to utilize Lot 433 for parking and must all parking fully comply with the requirements of Section 14-8?
 3. Has there been an abandonment of the use of Lot 433 for parking in conjunction with the FO'C'S'LE building?
 4. Does the fact that the FO'C'S'LE building is nonconforming by more than one factor require that any enlargement thereof conform to all dimensional regulations of the Zoning Ordinance?
 5. If the building is considered nonconforming by parking do Sections 14-2.8 and 14-5.2e require all off-street parking on Lot 434-1 unless relief from those sections is requested?
 6. Is the proposed club a permitted use in a business zone?
In turn, the Building Official responded to the inquiry through a letter dated July 5, 2000. He responded to each query by writing: (a) that Sakonnet Point Club was entitled to avail itself of 14-2.5(f), (b) that Sakonnet Point Club does not have to request relief in order to utilize lot 433 for parking, (c) that he did not believe sufficient evidence had been submitted to support a finding that the owners of Lots 433 and 2 434-1 abandoned its use as a parking lot, (d) that the proposed building does not have to conform to all dimensional criteria, (e) that Section 14-2.8(b) of the Ordinance is the more appropriate section and allows the use without the addition of parking spaces on Lot 434-1, and (f) that a club is a permitted use under the present Ordinance.
The Appellant then appealed the July 5, 2000 letter of the Building Official to the Board pursuant to § 14-1.4(c) of the Ordinance. On March 9, 2001, the Board found that by posing the aforementioned questions to the Building Official the Appellant was engaged in a thinly veiled attempt to appeal the Board's First Decision. The Board determined "that all six (6) questions directed to the Building Official in the June 22, 2000 correspondence of the Appellant had been addressed at the June 21, 2000 hearing of the Zoning Board of Review on the special use permit of the Sakonnet Point Club." (Second Decision at 1.) Moreover, the Board found that the Appellant was given a "full and fair opportunity to litigate all issues raised in the correspondence of June 22, 2000 to the Building Official." Id. at 2. As such, the Board unanimously voted to deny the appeal because the "Appellant was administratively, collaterally estopped from re-litigating the same exact issues which were litigated in the June 21, 2000 Decision of the Zoning Board of Review on the same parcel of land." Id. The Appellant timely appealed the Board's decision on March 22, 2001. On appeal, the Appellant argues that the Board erred in denying its appeal based on the doctrine of collateral estoppel.
 Standard of Review
The standard of review for this Court's appellate consideration of the decision is outlined in G.L. 1956 § 45-24-69(D), which states:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a zoning board decision, this Court must examine the entire certified record to determine whether substantial evidence exists to support the finding of the board. Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990).
Moreover, this Court should exercise restraint in substituting its judgment for that of the zoning board and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). It is only if the record is "completely bereft of competent evidentiary support" that a board of appeal's decision may be reversed. Sartor v. Coastal Resources Management Council of Rhode Island, 434 A.2d 266, 272 (R.I. 1981).
Review of Building Official's Interpretation of Zoning Ordinance The Appellant relied on G.L. 1956 § 45-24-54 and Section 14-9.1(a) of the Ordinance in submitting the letter containing six questions to the Building Inspector. G.L. 1956 § 45-24-54 provides, in pertinent part, that:
 "[i]n order to provide guidance or clarification, the zoning enforcement officer or agency shall, upon written request, issue a zoning certificate or provide information to the requesting party as to the determination by the official or agency within fifteen (15) days of the written request. In the event that no written response is provided within that time, the requesting party has the right to appeal to the zoning board of review for the determination."
Moreover, § 14-9.1(a) of the Ordinance states:
 "[i]t shall be the duty of the Building Official to interpret and enforce the provisions of this chapter in the manner and form and with the powers provided in the laws of the State and in the Charter and Ordinances of the Town. The Building Official shall refer all applications for variances, special use permits and other appeals to the Zoning Board of Review. The Building Official shall make a determination in writing, within fifteen (15) days, to any written complaint received, regarding a violation of this chapter. In order to provide guidance or clarification, the Building Official shall, upon written request, issue a zoning certificate or provide information to the requesting party within fifteen (15) days of the written request. Any determination of the Building Official may be appealed to the Board in accordance with subsection 14-9.7 of this chapter."
Both the statute and the Ordinance contemplate situations wherein the Building Official is initially approached regarding interpretation or clarification of a zoning ordinance and an adverse decision from that official is appealed to the Zoning Board. Thus, the "normal route of a zoning dispute is from the permit-issuing officer or enforcement officer, through the board of adjustment, to the courts for judicial review." Kenneth H. Young, Anderson's American Law of Zoning, § 19.26 at 401 (4th ed. 1996).
Such a system
 "insures that in the usual situation a zoning matter will reach the court on an administrative record, or at least with a prior administrative construction of the ordinance. Given the customary judicial respect for administrative interpretation of the ordinance the board of adjustment's exercise of this area of appellate jurisdiction may have an important and sometimes decisive impact upon the result." (Citations omitted.) Id.
Another leading authority has written that typically after a building inspector has issued a decision with respect to a use of land
 "[a] person aggrieved by the decision thereupon appeals to the board of appeals, asking it to rule upon the correctness of the administrative officer's determination; the board may reverse or affirm, wholly or partly, or may modify the order requirement, decision, or determination appealed from, and make such order, requirement decision or determination as, in its opinion, ought to be made in the case." Rathkopf, The Law of Zoning and Planning, § 37.01[7][a] at 37-22 (4th ed. 1999).
In this process, each of the actors involved, the building official and the zoning board, play distinct though significant roles. "In Rhode Island the local building official is a municipal administrative officer who is bound to follow the zoning ordinance and applicable statutory provisions pursuant to which he or she is authorized to act." Pitocco v. Harrington, 707 A.2d 692, 696 (R.I. 1998). In turn, "the duties assigned to a zoning board are to hear and determine appeals from decisions of administrative officers charged with the enforcement of zoning legislation, and, in addition to pass on applications for special exceptions or variances." Hassell v. Zoning Board of Review of the City of East Providence, 275 A.2d 646, 108 R.I. 349 (R.I. 1971). As such, although the Building Inspector is authorized to interpret the Ordinance and Code, his powers are not unbridled in carrying out this task. His interpretations are subject to direct review by the Board and ultimately by this Court. G.L. 1956 § 45-24-69(d).
The Rhode Island Supreme Court recognized, in Mello v. Board of Review of City of Newport, 177 A.2d 533, 536, 94 R.I. 43, 48 (R.I. 1962), that the procedure delineated in the statute is not typically followed by a landowner seeking a variance, when it wrote:
 "[i]t has been the practice of landowners, however, to bypass the building inspector and to make an original application to a board of review for a variance in instances where it appears that the officer would be compelled to deny an application for a construction permit. This variance, if granted, would then be the basis for an application for a construction permit that might subsequently be made. It appears from the records certified to this court in zoning cases that this procedure is the one to which property owners usually resort."
The case at bar did not follow the path delineated by the statute or Ordinance prior to its arrival before this Court. Here, the process began with the Petitioner's application for a special use permit pursuant to Section 14-2.5(f) of the Ordinance to allow demolition of a nonconforming structure on its property and replacement with a different nonconforming structure. The Board held a hearing on the matter on June 21, 2000 at which time it received the testimony of experts on behalf of the petitioner and considered exhibits submitted with the petition. In addition, the Board also heard and considered the arguments presented by counsel. The Board unanimously voted to grant the request for a special use permit and issued a written decision to that effect on July 7, 2000. There was no appeal to this decision filed with this Court.
In a letter dated June 22, 2000, the day after the hearing, Appellant's counsel directed six questions to the Building Official regarding the proposed new use by Petitioner of Lots 434-1 and 433. The Building Official responded to each of the inquiries in a manner consistent with the relief that was granted by the Board with respect to Petitioner's request for a special use permit. Appellants responded by filing an appeal to the Building Official's letter to the Board pursuant to Section 14-1.4(c) of the Ordinance.
In so doing, the Appellant has attempted to circumvent the appeal process provided by G.L. 1956 § 45-24-69 and Section 14-9.10 of the Ordinance. Section 14-9.10 of the Ordinance provides, in pertinent part, that
 "[a]n aggrieved party may appeal a decision of the Board to the Superior Court for Newport County by filing a complaint setting forth the reasons of appeal within twenty (20) days after such decision has been filed and posted with the Town Clerk."
The Appellant failed to exercise its statutory right to appeal the decision of the Board granting Petitioner a special use permit. Instead the Appellant submitted to the Building Official questions relating to the Petitioner's proposed new use of Lots 434-1 and 433, and on receiving an adverse response from the Building Official, sought to appeal that decision. By failing to appeal the Board's First Decision within the time mandated by the statute and Ordinance, the Appellant has waived its right to appeal the same pursuant to G.L. 1956 § 45-24-69.
 Doctrines of Collateral Estoppel and Administrative Finality
The Appellant argues that the Board erred in denying its appeal of the Building Official's findings on the grounds of collateral estoppel. The Appellant contends that there was no basis upon which the Board could apply the doctrine of collateral estoppel given that the issues raised in the letter to the Building Official had not been previously litigated and decided. Moreover, the Appellant asserts there was no evidence before the Board upon which to rest its determination that the Appellant was collaterally estopped from bringing this appeal.
Collateral estoppel is a rigid doctrine that requires certain elements to be met, including "an identity of issues; the prior proceeding must have resulted in a final judgment on the merits; and the party against whom collateral estoppel is sought must be the same as or in privity with the party in the prior proceeding," for its application. State v. Chase,588 A.2d 120, 122 (R.I. 1991). Moreover, the doctrine of collateral estoppel "directs that an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings." Mulholland Construction Co. v. Lee Pare Associates, Inc., 576 A.2d 1236, 1238 (R.I. 1990).
In the instant case, the Board voted unanimously to deny the appeal because the Appellant was "collaterally estopped from re-litigating the same exact issues which were litigated in the June 21, 2000 Decision." (Second Decision at 2.) The Board found that all six questions posed to the Building Official had been addressed at the hearing on the special use permit request of the Petitioner. The first question raised was whether "Sakonnet Point Club [is] entitled to avail itself of Section 14-2.5(f) of the zoning ordinance, where the dimensional nonconformance of the building sought to be demolished and rebuilt exists by virtue of a variance granted by the Zoning Board?" (Letter from Palumbo to Moore of 6/22/00, at 1.) This question had to be addressed by the Board in its First Decision when it unanimously voted to grant "petitioner's application for a special use permit pursuant to Section 14-2.5(f) . . . to allow voluntary demolition of a nonconforming structure and replacement of same with a different nonconforming structure." (First Decision at 1.) In addition, it is clear in the Board's grant of the special use permit that the issues raised by the Appellant in questions two through five were considered. At the February 14, 2001 hearing, Board Member and Solicitor William Conley stated "if one reviews the remaining five questions . . . each one of those could be read to be a legal obstacle to the Board's granting of the special use permit." Thus the issues raised by the Appellant through appeal of the response rendered by the Building Official are the very same issues that were brought before and decided by the Board when it granted the Petitioner's special use permit. The doctrines of collateral estoppel and administrative finality prevent the Appellant from relitigating an issue that was already decided against its favor by the Board. In appealing the response of the Building Official to its letter of June 22, 2000, the Appellant is attempting to try issues that were already heard and decided by the Board.
Aside from identicality of issues, the doctrine of collateral estoppel requires the existence of privity, that is "a non-party may be bound by a prior judgment if that party substantially controlled or was represented by a party to the original action." Commercial Union Ins. Co. v. Pelchat, 727 A.2d 676 (R.I. 1999) (citing Restatement (Second) Judgments 39, 41 (1982)). Here the Appellant had been present at the hearing on the Petitioner's special use permit and had a full and fair opportunity to litigate all the issues raised in the letter. At the June 21, 2000 hearing, Attorney Joseph R. Palumbo, Jr., who represents the Appellant, appeared before the Board on behalf of abutters Dr. and Mrs. Philemon T. Marvel. The Board considered the arguments he presented in arriving at its decision to grant the Petitioner's special use permit. In addition, it was Attorney Palumbo, on behalf of the Appellant, who wrote the letter to the Building Official. It should be noted that a copy of the letter was forwarded to Dr. and Mrs. Philemon T. Marvel. Thus, in its appeal of the Building Official's letter, the Appellant presented the same issues that had previously been decided by the Board, and the appeal involved the same parties or a party in privity with the party in the prior proceeding. As such, the Appellant was collaterally estopped from appealing the Building Official's letter.
The Appellant further argues that the doctrine of collateral estoppel does not apply to this appeal because the Board was comprised of new members who did not participate in the prior hearing at which Petitioner's request for a special use permit was granted. The argument proceeds that these new members were not privy to the bases for the Board's granting of the special use permit. As such, these new members could not have known if the issues raised on the appeal of the Building Official's letter had been actually litigated and decided. The Appellant contends that it was necessary for the new members to have a transcript of the previous hearing in order to determine properly whether the same issues had been discussed. The Appellant relies on State v. Berberian,411 A.2d 308, 311, 122 R.I. 693, 699-700 (R.I. 1980) (citing Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)), wherein the court noted that
"to determine whether collateral estoppel applied, it would be necessary to examine the record of a prior proceeding, take into account the pleadings, evidence, charge, and other relevant matter, and then conclude whether a good trier of fact could have grounded its decision upon an issue other than that which the defendant seeks to foreclose from consideration."
However, State v. Berberian, a criminal case involving a defendant who had been convicted of reckless driving, is distinguishable from at the instant matter. In the instant case, the Board members had before them several documents, including the prior decision of the Board and the discussion that ensued between counsel and the various Board members, upon which to base their decision that the Appellant was collaterally estopped from appealing the Building Official's letter. These materials provided those members who were not on the Board when the Petitioner's application for a special use permit was decided with the necessary information to decide whether the issues raised in the letter to the Building Official had been litigated and decided. See Lombardi v. Kooloian, 560 A.2d 951 (R.I. 1989) (citing Lewandowski v. Vermont State Colleges, 142 Vt. 446, 457 A.2d 1384 (1983)) ("due process or a fair hearing is not denied by the mere fact that an otherwise authorized board member participates in a decision without his or her having been on the board when the evidence was heard."). Furthermore, this "new" Board was now hearing an appeal of a building inspector's determination, not an application for a special use permit.
The appeal is also barred by the doctrine of administrative finality, which is recognized in Rhode Island. Day v. Zoning Board of Review of Cranston, 92 R.I. 136, 140, 167 A.2d 136, 139 (1962). Under this doctrine, "when an administrative agency receives an application for relief and denies it, a subsequent application for the same relief may not be granted absent a showing of a change in material circumstances between the two applications." Johnston Ambulatory Surgical Assocs., Ltd. v. Nolan, 755 A.2d 799, 808 (R.I. 2000). The rule applies in all situations where the outcome sought in each application is substantially similar, May-Day Realty Corp. v. Board of Appeals of Pawtucket,107 R.I. 235, 237, 167 A.2d 400, 401-02 (1970), even if the two applications rely on different legal theories. Costa v. Gagnon,455 A.2d 310, 313 (R.I. 1983). Administrative finality differs from the doctrine of res judicata because it "provides for a qualified and limited preclusion, wherein a second application for substantially similar outcome from an administrative agency is barred unless the applicant can demonstrate a change in material circumstances between the two applications." Johnston Ambulatory Surgical Assocs., Ltd. v. Nolan, 155 A.2d 799, 809 (R.I. 2000). This doctrine is rooted "in the principle that persons affected by a decision in zoning matters ought not to be twice vexed for the same cause and are entitled to have their rights and liabilities settled by a single decision upon which reliance may be placed." Marks v. Zoning Board of Review of City of Providence,203 A.2d 761, 98 R.I. 405 (R.I. 1964).
In the instant case, the Appellant has provided no information to indicate that there has been a material or substantial change in circumstances that would warrant reversing the earlier determination of the Board. There was no evidence of changes during the period between the grant of Petitioner's application for a special use permit and the appeal of the Building Inspector's letter presented to the Board. Since the issues presented in the appeal were the same as those raised or that could have been raised in the hearing on the Petitioner's special use permit and no material or substantial changes had taken place, then the doctrine of administrative finality prohibits the Board from granting the relief requested.
 Conclusion
After a review of the entire record, this Court finds that the Board's decision which denied the appeal of the Building Official's determinations was not clearly erroneous in view of the reliable, probative and substantial evidence on the record and was not arbitrary or capricious or characterized by an abuse or unwarranted exercise of discretion. The decision was not made in violation of constitutional, statutory, or ordinance provisions or in excess of the board's authority, and was not affected by other error of law. Substantial rights of the Appellant have not been prejudiced. Accordingly, the decision of the Zoning Board of Review of the Town of Little Compton is affirmed.
Counsel shall submit the appropriate order for entry in accordance with this decision.