DECISION
Before the Court is an appeal by 401 Auto Sales, LLC ("Appellant" or "LLC") from a final order of the Director of the Department of Administration, Office of the Administrator of Adjudication ("Director"), upholding an adverse decision of the Motor Vehicle Dealers' License and Hearing Board ("Board"). Appellant seeks reversal of the decision of the Board denying its application for a dealer's license to operate as a used motor vehicle dealer. The Court has jurisdiction over Appellant's timely appeal pursuant to G.L. 1956 §§ 31-5-2.1(d)[1] and 42-35-15. *Page 2 
 I FACTS AND TRAVEL
Appellant is a limited liability company organized under the laws of the State of Rhode Island. On May 23, 2006, the manager and sole member of the LLC, Manasse Payen, filed an application — on behalf of Appellant — with the Dealers' License and Regulations Office for a motor vehicle dealer's license in order to operate a used motor vehicle dealership at 616 Douglas Avenue in Providence, Rhode Island ("Douglas Avenue Property").[2]
(Application for Motor Vehicle Dealer's License, 401 Auto Sales, LLC, May 22, 2006 (filed May 23, 2006).) Following a hearing on June 22, 2006, the Board conditionally granted Appellant's license application, subject to a satisfactory site inspection of the Douglas Avenue Property.[3] (Motor Vehicle Dealers' Hearing Board Results, June 22, 2006.)
In accordance with the Board's directives, a site inspection of the Douglas Avenue Property was performed on June 28, 2006 by Investigator Kevin Rabbitt. During the inspection, however, Investigator Rabbitt determined that the building and display area did not conform to the minimum size requirements set forth in Section VI (B) of the Rules and Regulations Regarding Dealers, Manufacturers Rental Licenses ("Rules and Regulations"), mandating that a dealer's place of business include "at least 2,400 square feet of enclosed and heated floor space." See Rules and Regulations § VI (B). Indeed, Investigator Rabbitt ascertained that the Douglas Avenue Property only afforded 762 square feet of enclosed building space. (Investigator K. Rabbitt, Site Inspection Report, *Page 3 
616 Douglas Avenue, Providence, June 28, 2006.) Accordingly, Joseph Monteiro, Chief Enforcement Officer for the Division of Motor Vehicles, sent a correspondence to Appellant, dated June 30, 2006, stating that the pending license application was denied because the "building and display area do not meet the minimum requirements." (Letter from Joseph I. Monteiro, Chief of Division of Enforcement, to Manasse Payen, June 30, 2006.) Appellant did not appeal that decision.
On September 11, 2006, Appellant, through counsel, resubmitted the application for a motor vehicle dealer's license and attached thereto a memorandum in support of the application. (Memorandum in Support of Application of 401 Auto Sales, LCC, Sept. 11, 2006.) Therein, Appellant conceded that the Douglas Avenue Property did not conform to the building size requirements set forth in Rules and Regulations. Id. Nonetheless, Appellant maintained that the proposed location "has obtained a Zoning Certification as a used car lot, has received a License Approval from the Department of Inspections and Standards for a Dealer in Second-Hand Automobiles, and has met all other requirements set forth in the [Rules and Regulations]." Id. Moreover, Appellant noted that two used car dealerships had operated at the Douglas Avenue Property between 1976 and 1990. Id. In light of these facts, Appellant requested "that the Department of Administration exercise its discretion granted under Title VI, Subsection B, to allow an exception to the building size requirement." Id.
On September 15, 2006, Chief Enforcement Officer Monteiro responded to the Appellant's request on behalf of the Board. Therein, Mr. Monteiro stated that:
 "[T]here is no allowance in [the] Rules and Regulations for an exception [to the building size requirement], and so we have no choice but to deny your request. Section VI (B) of the Rules and Regulations requires that `all dealers must *Page 4 
establish a suitable place of business . . . which contains at least 2,400 square feet of enclosed and heated floor space.' The only exception provided for with regard to this requirement was for dealers whose licenses expired on December 31, 1983, who `may [have been] granted an exception to this requirement at the discretion of the department.' [. . .] There [sic] mere fact that your client meets all of the other requirements for licensure under the Rules and Regulations does not except it from meeting the building size requirement. There is no discretion allowed under Section VI (B) with regard to your client's application." (Letter from Joseph I. Monteiro, Chief of Division of Enforcement, to Heather M. Bonnet, Counsel for 401 Auto Sales, LLC, Sept. 15, 2006.)
Furthermore, Mr. Monteiro opined that:
 "The fact that the location may have been used as a dealership in the past is immaterial to your client's licensing application. It is possible that the dealer who was licensed at the 616 Douglas Avenue location in the past was granted an exception in 1983 under the one exception allowed in Section VI (B) of the Rules and Regulations; whether that was the case or not, your client is not now eligible for that exception, and therefore must qualify with each and every requirement of the Rules and Regulations, as must every other application for a dealer['s] license in the state." Id.
Accordingly, Mr. Monteiro concluded that "based on the outcome of the site inspection which revealed that the present location does not comply with the building size requirements of Section VI (B) of the Rules and Regulations, the application for a dealer['s] license is denied." Id.
Appellant timely appealed the September 15, 2006 decision[4] to the Director, and Administrator of Adjudication Catherine R. Warren ("Hearing Officer") rendered her appellate decision on February 2, 2007. In the decision, the Hearing Officer made the *Page 5 
requisite findings of facts and, thereupon, concluded that although the appeal was not barred by the doctrine of administrative finality, Appellant failed to demonstrate any substantive, procedural, statutory, or constitutional infirmity with the Board's decision. (Department of Administration Decision, Feb 2, 2007, ("Decision") at 4, 11-12.) Notably, the Hearing Officer found that the Board had the requisite authority to promulgate regulations establishing a minimum building size requirement for motor vehicle dealers' place of business and, pursuant to the established Rules and Regulations, the Board was not vested with discretion to waive or deviate from this licensing requirement with respect to Appellant's application.Id. at 5-9. Moreover, the Hearing Officer concluded that the fact that the Board previously licensed a dealer at the Douglas Avenue Property was immaterial to Appellant's application, and the Board's prior issuance of any such dealer's license did not constitute an affirmative representation to Appellant which would give rise to a claim for equitable estoppel. Id. at 8-11. Accordingly, after giving due consideration to the issues raised, the Hearing Officer upheld the Board's denial of Appellant's application for a motor vehicle dealer's license.Id. at 11-12.
Appellant timely appealed the decision of the Hearing Officer to this Court. On appeal, Appellant argues that, contrary to the interpretation of the Board and the Hearing Officer, Section VI (B) of the Rules and Regulations affords the Board discretion to allow for an exception to the building size requirement for license applicants that intend to operate at a facility which served as a motor vehicle dealership prior to December 31, 1983. Thus, according to Appellant, since the Douglas Avenue Property operated as a motor vehicle dealership up to and after December 31, 1983, the Board's denial of *Page 6 
Appellant's license application — due to the facility's failure to conform to the building size requirement — constituted an abuse of discretion. Moreover, Appellant contends that the Board either "specifically permitted or tacitly allowed a previous used motor vehicle dealers [sic] at [the Douglas Avenue Property] [. . .] to continue operations as a used motor dealership far beyond December 31, 1983 [. . .] [and] [i]n either instance[,] the action or inaction of the Board as to previous owners of dealerships at that location led to [Appellant's] purchase of the premises for use as a used motor vehicle dealership [. . .]." Thus, according to Appellant, "[t]he fact that the property has been previously used for the sale of used vehicles provides and [sic] legal and equitable basis for granting [Appellant's] request for a license."
In response, the Board contends that the Rules and Regulations clearly do not provide it with discretion to allow for an exception to the minimum building size requirement with respect to Appellant's application, and therefore, the Hearing Officer's decision was supported by the reliable, probative, and substantial evidence in the record. However, the Board argues that the Court need not consider the propriety of the Hearing Officer's decision in this matter because the doctrine of administrative finality precluded the Board and, in turn, the Hearing Officer, from considering the merits of Appellant's second license application.
Additional facts will be provided as necessary to the resolution of this matter.
 II STANDARD OF REVIEW
The Superior Court reviews a contested administrative decision pursuant to the Administrative Procedures Act, G.L. 1956 § 42-35-15(g). This section provides that: *Page 7 
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of an administrative agency under § 42-35-15, this Court acts in the manner of an appellate court with a limited scope of review. Mine Safety Appliances v.Berry, 620 A.2d 1255, 1259 (R.I. 1993). This review is restricted "to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Assocs.,Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (quotingBarrington Sch. Comm. v. R.I. State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992)). Legally competent evidence is "some or any evidence supporting the agency's findings." AutoBody Ass'n of R.I. v. Dep't of Bus. Regulation,996 A.2d 91, 95 (R.I. 2010) (quoting Environmental ScientificCorp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993)). If the agency's decision is based on legally competent evidence in the record, the Court must uphold the agency's *Page 8 
decision. Id. (citing R.I. Pub. Telecomm. Auth. v. R.I.State Labor Relations Bd., 650 A.2d 479, 484 (R.I. 1994)).
"[T]he Superior Court may not, on questions of fact, substitute its judgment for that of the agency whose action is under review, even in a case in which the court might be inclined to view the evidence differently and draw inferences different from those of the agency." Johnston Ambulatory Surgical Assocs.,755 A.2d at 805 (internal quotations and citations omitted). "Questions of law, however, are not binding on the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v. Norberg,118 R.I. 596, 607, 376 A.2d 1, 6 (1977). Nonetheless, it is a "well-recognized doctrine of administrative law that deference will be accorded to an administrative agency when it interprets a statute [or regulation] whose administration and enforcement have been entrusted to the agency * * * even when the agency's interpretation is not the only permissible interpretation that could be applied."Auto Body Ass'n of R.I.,996 A.2d at 97 (alteration in original) (quoting Pawtucket PowerAssocs. Ltd. P'ship v. City of Pawtucket,622 A.2d 452, 456-57 (R.I. 1993)).
 III LAW AND ANALYSIS A Administrative Finality
As a threshold matter, the Board contends that Appellant's appeal should be denied based on the doctrine of administrative finality. Specifically, the Board notes that on May 23, 2006, Appellant filed an application for a motor vehicle dealer's license in order to operate a used motor vehicle dealership at the Douglas Avenue Property. *Page 9 
According to the Board, Chief Enforcement Officer Monteiro's correspondence, dated June 30, 2006, informed Appellant of the Board's decision with respect to this pending license application; namely, that the application was denied because the building and display area did not meet the minimum size requirements set forth in the Rules and Regulations. The Board maintains that Appellant neglected to appeal that decision, but rather, resubmitted the same application on September 11, 2006. The Board argues that this subsequent license application did not indicate any change in circumstances, and thus, pursuant to the doctrine of administrative finality, the Board erred ab initio in considering the merits of this application. The Board contends that since it should not have reviewed Appellant's subsequent license application, the Hearing Officer erred in her consideration of the same.[5] The Court agrees.
Pursuant to the doctrine of administrative finality, "when an administrative agency receives an application for relief and denies it, a subsequent application for the same relief may not be granted absent a showing of a change in material circumstances during the time between the two applications." JohnstonAmbulatory Surgical Assocs., 755 A.2d at 808 (citingAudette v. Coletti, 539 A.2d 520, 521-22 (R.I. 1988)). "This rule applies as long as the outcome sought in each application is substantially similar [. . .] even if the two applications each rely on different theories." Id. (citing Costa v.Gagnon, 455 A.2d 310, 313 (R.I. 1983); May-Day RealtyCorp. v. Bd. of Appeals of Pawtucket, *Page 10 107 R.I. 235, 237, 267 A.2d 400, 401-02 (1970)). Our Supreme Court explained that "[t]he purpose of the doctrine [of administrative finality] is to promote consistency in administrative decision-making, such that if the circumstances underlying the original decision have not changed, the decision will not be revisited in a later application." Id. at 810. Moreover, "[i]t prevents repetitive duplicative applications for the same relief, thereby conserving the resources of the administrative agency and of interested third parties that may intervene." Id.
The doctrine of administrative finality is operative in cases where the first decision of the administrative agency was a valid final decision, and the relief sought in connection with the second application is "substantially similar" to the prior application.See id. at 808-09. In such instances, an applicant has the burden of showing a substantial or material change in circumstances between the first and second application.Id. at 811. With respect to this burden, our Supreme Court has instructed that:
 "What constitutes a material change will depend on the context of the particular administrative scheme and the relief sought by the applicant and should be determined with reference to the statutes, regulations, and case law that govern the specific field. The changed circumstances could be internal to the application, as when an applicant seeks the same relief but makes important changes in the application to address the concerns expressed in the denial of its earlier application. Or, external circumstances could have changed, as when an applicant for a zoning exception demonstrates that the essential nature of land use in the immediate vicinity has changed since the previous application." Id.
A determination of whether circumstances have materially or substantially changed is to be made by the administrative decision-maker and "a trial justice would likely abuse his *Page 11 
or her discretion by independently reviewing the evidence and rejecting the [decision-maker's] finding." Id. at 812.
In the instant case, the Court observes that the Hearing Officer found that Appellant submitted two applications for a motor vehicle dealer's license to the Board: an initial license application and, following the Board's denial of the same, a license application requesting a waiver of the building size requirement. (Decision at 3-4.) Upon consideration of these submissions, the Hearing Officer determined that there was not a material change in circumstances with respect to the two applications.Id. at 4. Moreover, invoking the principle set forth by our Supreme Court in Costa v. Gagnon — that administrative finality is applicable in instances where the relief sought in each application is substantially similar, even if the applications are premised on different legal theories — the Hearing Officer correctly noted that the fact that Appellant's second application relied on an alternate legal theory — namely, waiver of the building size requirement — was inconsequential to the applicability of this preclusive doctrine. Id.; see also455 A.2d 310, 313 (R.I. 1983). Nonetheless, in spite of the foregoing findings, the Hearing Officer concluded that the doctrine of administrative finality was inapplicable to the instant matter.Id. In arriving at this conclusion, the Hearing Officer noted that "the Board chose to act on the second application [. . .] [p]erhaps the Board chose to treat the applications as one application." Id.
Although limited by her brevity, the Hearing Officer ostensibly made the determination that the Board received and considered Appellant's September 11, 2006 application as a subsequent component of the May 23, 2006 application, and thus, the doctrine of administrative finality did not preclude consideration of the same. Upon *Page 12 
review, however, the Court concludes that such a finding is not supported by legally competent evidence in the record. SeeArnold v. R.I. Dep't of Labor and Training Bd. of Review,822 A.2d 164, 167 (R.I. 2003) (noting that a reviewing court defers to the administrative agency's factual determinations provided that they are supported by legally competent evidence). Indeed, the record demonstrates that the Board considered and subsequently denied Appellant's May 23, 2006 license application, in a correspondence dated June 30, 2006, because the "building and display area [at the Douglas Avenue Property] [did] not meet the minimum requirements." (Letter from Joseph I. Monteiro, Chief of Division of Enforcement, to Manasse Payen, June 30, 2006.) Moreover, the record reflects that, rather than appeal the Board's decision to the Director, Appellant resubmitted a substantially similar license application more than two months later, on September 11, 2006, requesting that "the Department of Administration exercise its discretion granted under Title VI, Subsection B, to allow an exception to the building size requirement." (Memorandum in Support of Application of 401 Auto Sales, LCC, Sept. 11, 2006.) Upon review, the Court is unable to locate any evidence in the record, nor has the Hearing Officer identified any such evidence, to suggest that "the Board chose to treat the applications as one application." Rather, the record clearly indicates that separate and independent consideration was given to each of Appellant's respective license applications. Consequently, the Court concludes that the Hearing Officer's finding that the doctrine of administrative finality was inapplicable to the instant matter because "the Board chose to treat the applications as one application" is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. See G.L. 1956 § 42-35-15(g)(5). *Page 13 
In light of the foregoing, the Court is compelled to observe that Appellant's September 11, 2006 license application was barred by the doctrine of administrative finality. Indeed, this application was substantially similar to, and requested the same relief as, Appellant's May 23, 2006 application. Although the later application was premised on a different legal theory than the former, this fact is inconsequential since the relief sought in each application was substantially similar. See Johnston Ambulatory SurgicalAssocs., 755 A.2d at 808; Costa v. Gagnon, 455 A.2d at 313. Further, the Hearing Officer determined, and the Court agrees, that there was not a material change in circumstances with respect to the two applications. See Decision at 4. Accordingly, since Appellant's subsequent application was barred by the doctrine of administrative finality, the Board committed an error of law in considering the same. Given that the Board improperly considered the merits of Appellant's September 11, 2006 license application, the Court concludes that Appellant's appeal pertaining to this application must be denied.
Though the conclusion above is dispositive of the case sub judice, for purposes of discussion the Court will address each of the arguments raised by Appellant on appeal.
 B Interpretation of the Rules and Regulations
On appeal, Appellant argues that, contrary to the interpretation of the Board and the Hearing Officer, Section VI (B) of the Rules and Regulations affords the Board discretion to allow for an exception to the building size requirement for license applicants that intend to operate at a facility which served as a motor vehicle dealership prior to December 31, 1983. Appellant notes that a site assessment of the Douglas Avenue Property conducted in June 2004, revealed, in pertinent part, as follows: *Page 14 
 "[A]s far back as 1918[,] the site was used for residential use. Residential use continued at the site until 1976, then the site was listed as occupied by the Crestwood Motors Used Auto Sales until 1980. By 1980[,] the site was the location of Place Auto Sales through to 1990's. By 1990[,] the site was not occupied and was listed as vacant." (Environmental Site Assessment Public Health Risk Assessment, 616 Douglas Avenue, June 2004, at 3.)
Thus, according to Appellant, since the Douglas Avenue Property operated as a motor vehicle dealership up to and after December 31, 1983, the Board's denial of Appellant's license application — due to the facility's failure to conform to the building size requirement — constituted an abuse of discretion. The Court disagrees.
At the outset, the Court notes that "[r]egulations that are duly promulgated by an administrative agency[,] [. . .] pursuant to a specific grant of legal authority to do so, are legislative rules that carry the force and effect of law [. . .]."In re Advisory Opinion to the Governor,732 A.2d 55, 75 (R.I. 1999) (citing Parkway TowersAssocs. v. Godfrey, 688 A.2d 1289, 1293 (R.I. 1997)). When an agency is called upon to interpret its own regulations, the agency's interpretation is entitled to deference on appeal. Seeid. at 76; (citing Defenders of Animals, Inc. v. Dep't ofEnvtl. Mgmt., 553 A.2d 541, 543 (R.I. 1989); Gallison v.Bristol Sch. Comm., 493 A.2d 164, 166 (R.I. 1985)); seealso Auto Body Ass'n of R.I.,996 A.2d at 97 ("[D]eference will be accorded to an administrative agency when it interprets a statute [or regulation] whose administration and enforcement have been entrusted to the agency * * * even when the agency's interpretation is not the only permissible interpretation that could be applied."). Our Supreme Court has explained that proper deference to an agency's interpretation of its own regulations requires a court "to presume the validity and reasonableness of that construction until and *Page 15 
unless the party challenging its interpretation prove[s] otherwise."State v. Cluley, 808
A.2d 1098, 1104 (R.I. 2002).
In the instant matter, the disputed provision of the Rules and Regulations — Section VI (B) — provides, in pertinent part, as follows:
 "VI. REQUIREMENTS FOR DEALERS
 "[. . .]
 "(B) `PLACE OF BUSINESS': Every dealer must establish a suitable place in which to conduct the business of dealing in motor vehicles. The business must be housed in one (1) building, on the premises, which contains at least 2,400 square feet of enclosed and heated floor space to provide a suitable office and space where motor vehicles may be properly repaired and serviced. Any dealer whose license expires at midnight on December 31, 1983 may be granted an exception to this requirement at the discretion of the Department. Minimum floor space in all instances shall be interpreted as a ground level space and in no instance shall basement or second floors or any upper or lower areas be considered in computing the requirement minimum amount of office, service or showroom enclosed space. [. . .] A minimum requirement for lot display must be 2,400 square feet. This place of business must be used exclusively by the dealer for the purpose of displaying, repairing, buying and selling vehicles." Rules and Regulations § VI (B) (emphasis added).
The Court observes that upon review, the Board concluded, and the Hearing Officer affirmed, that this provision does not provide the Board with discretion to allow for an exception to the minimum building size requirement with respect to Appellant. See
Letter from Joseph I. Monteiro, Chief of Division of Enforcement, to Heather M. Bonnet, Counsel for 401 Auto Sales, LLC, Sept. 15, 2006 ("There is no discretion allowed under Section VI (B) with regard to your client's application."); Decision at 8-9 ("Appellant does not point to any statutory or regulatory authority that grants the Board the authority *Page 16 
to waive a licensing condition required by the Regulation."). Upon due consideration, the Court finds that the Board's interpretation of the same was reasonable and appropriate.
Indeed, the provision at issue clearly and unambiguously provides that the Board may only grant an exception to building size requirement for "[a]ny dealer whose license expire[d] at midnight on December 31, 1983." Rules and Regulations § VI (B) (emphasis added). The term "dealer" is defined, in pertinent part, as "any person, firm or corporation who sells or acts as a broker with respect to the sale of more than four (4) vehicles in any one calendar year." Rules and Regulations § V (A). Thus, contrary to Appellant's contention, the Board's discretion to grant an exception to the building size requirement does not pertain to facilities that served as a motor vehicle dealership on or before December 31, 1983. Rather, it merely extends to a person, firm, or corporation that had a dealer's license which was set to expire as of this date. Consequently, the fact that the Douglas Avenue Property was used as a motor vehicle dealership from 1976 until 1990 — more than fifteen years prior to Appellant's dealer's license request — is wholly inconsequential to the application of the discretionary exception.
Mindful of the old adage that an ounce of history is worth a pound of logic, the Court observes that the provision permitting discretion to allow for an exception to the 2400 square feet building size requirement for "[a]ny dealer whose license expire[d] at midnight on December 31, 1983," was included in an amended version of the Rules and Regulations that went into effect on December 6, 1983. See Rules and Regulations of the Rhode Island Motor Vehicle Dealers' License Commission § III(b) (Dec. 6, 1983). Importantly, however, these revised Rules and Regulations also increased the required *Page 17 
minimum building size of a dealer's place of business from 1500 to 2400 square feet.[6] Id. Thus, it is readily apparent that the inclusion of the provision to grant an exception was prompted by, and responsive to, the implementation of the increased building size requirement. In other words, the discretion provision was included so the licensing authority could grant an exception to an individual or entity that operated a motor vehicle dealership which was rendered non-conforming by the amendment to the Rules and Regulations. Thereby, the drafters ensured that a lawfully preexisting motor vehicle dealer would not be obligated to close its doors by virtue of the fact that it was unable to conform to the newly enacted requirements.
Quite clearly, this is not the case in the matter subjudice. Indeed, here, Appellant's application for a dealer's license in connection with the Douglas Avenue *Page 18 
Property was submitted, for the first time, more than twenty years after the 2400 square feet building size requirement was included in the Rules and Regulations. Consequently, unlike a situation contemplated above — whereby a lawfully existing motor vehicle dealership is rendered nonconforming by an amendment to the Rules and Regulations, and therefore, requires a variance in order to remain in operation — the building size requirement at issue was in full force and effect for more than two decades preceding Appellant's submission of the license application. Thus, Appellant had ample notice of this longstanding, essential requirement. Appellant's failure to heed this requirement does not make it any less binding, nor does it warrant the extension of an exception.
Accordingly, in light of clear and unambiguous meaning of the provision affording an exception to building size requirement for "[a]ny dealer whose license expire[d] at midnight on December 31, 1983," as well as the purpose underlying its implementation, the Court finds that the Board and, in turn, the Hearing Officer properly determined that the sole discretionary exception afforded in Section V (B) does not apply to Appellant's license application.
 C Equitable Estoppel
Appellant also argues that the Board either "specifically permitted or tacitly allowed a previous used motor vehicle dealers [sic] at [the Douglas Avenue Property] [. . .] to continue operations as a used motor dealership far beyond December 31, 1983 [. . .] [and] [i]n either instance[,] the action or inaction of the Board as to previous owners of dealerships at that location led to [Appellant's] purchase of the premises for use as a used motor vehicle dealership [. . .]." Although inartfully drafted, it appears Appellant *Page 19 
contends that the Board is equitably estopped from denying his license application by virtue of the fact that the Douglas Avenue Property was previously utilized as a motor vehicle dealership. To the extent Appellant makes such an argument, however, the Court disagrees.
It is well settled that "[e]stoppel is extraordinary relief, which will not be applied unless the equities clearly [are] balanced in favor of the part[y] seeking relief." Waterman v. Caprio,983 A.2d 841, 846 (R.I. 2009) (alteration and emphasis in original) (quoting Sturbridge Home Builders, Inc. v. Downing Seaport,Inc., 890 A.2d 58, 67 (R.I. 2005)). Although only operative in extraordinary circumstances, our Supreme Court has opined that "in an appropriate factual context[,] the doctrine of estoppel should be applied against public agencies to prevent injustice and fraud where the agency or officers thereof, acting within their authority, made representations to cause the party seeking to invoke the doctrine either to act or refrain from acting in a particular manner to his [, her, or its] detriment." Romano v. Retirement Bd. ofEmployees' Ret. Sys. of R.I., 767 A.2d 35, 39 (R.I. 2008) (alteration in original) (quoting Ferrelli v. Dep't of EmploymentSec., 106 R.I. 588, 594, 261 A.2d 906, 910 (1970)). In order to establish a claim for equitable estoppel, the following elements must be present:
 "[F]irst, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, [proof] that such representation or conduct in fact did induce the other to act or fail to act to his [or her] injury." McNulty v. City of Providence, 994 A.2d 1221, 1225 (R.I. 2010) (alterations in original) (quoting Providence Teachers Union v. Providence Sch. Bd., 689 A.2d 388, 391-92 (R.I. 1997)). *Page 20 
As a threshold matter, when claiming the doctrine of equitable estoppel against a public agency, "it should appear that there was some positive action on the part of the agents which had induced the action of the adverse party." Ferrelli,106 R.I. at 593, 261 A.2d at 909. Accordingly, "[m]ere nonaction [on the part of the agency] is insufficient to justify an application of the doctrine." Id.
The Court observes that, upon review of the facts presented by Appellant, the Hearing Officer determined that the doctrine of equitable estoppel did not bar the Board from denying Appellant's license application. (Decision at 9-10.) Specifically, the Hearing Officer found that:
 "Appellant has not argued or provided any evidence that the Board or any Board member made affirmative representations to Appellant regarding the requirements to obtain a dealer's license. Appellant has not provided any evidence that Appellant relied to its detriment on an affirmative representation by the Board. Instead, the Appellant argued it purchased property where the Board had previously allowed a dealer to be licensed. However, the method by which the Appellant chose to purchase the property [. . .] did not depend on any affirmative misrepresentations by the Board to the Appellant and is not a consideration before the Board. On the basis of the facts before the undersigned, the doctrine of equitable estoppel does not apply." Id. at 10.
Upon due consideration, the Court finds that the Hearing Officer's finding regarding the inapplicability of the doctrine of equitable estoppel was supported by legally competent evidence and in accord with the applicable law.
As the Hearing Officer properly noted, the record is devoid of any evidence to suggest that the Board or any of its officers made affirmative representations designed to induce Appellant to act in reliance thereon. The mere fact that an entity was permitted to operate a motor vehicle dealership at the Douglas Avenue Property more than a decade *Page 21 
before Appellant purchased the property does not, in and of itself, constitute the type of conduct that would give rise to a claim for equitable estoppel. Indeed, the Board's issuance of a license to a wholly separate entity years earlier was, quite clearly, not an affirmative representation "directed to [Appellant] for the purpose of inducing the [Appellant] to act or fail to act in reliance thereon." See McNulty, 944 A.2d at 1225 (quotingProvidence Teachers Union, 689 A.2d at 391-92). However, even assuming arguendo that such conduct could constitute an affirmative representation to Appellant, the Court concurs with the Hearing Officer's finding that the record lacks even a scintilla of evidence to indicate that Appellant opted to purchase the Douglas Avenue Property in reliance on the same.
Accordingly, in light of the foregoing, the Court finds that to the extent Appellant contends that the doctrine of equitable estoppel precludes the Board from denying its dealer's license application, this argument is wholly unavailing.
 CONCLUSION
For the reasons set forth herein, Appellant's appeal is denied. Substantial rights of Appellant have not been prejudiced. Counsel shall submit an appropriate order consistent with this Decision.
[1] The Court observes that during the pendency of Appellant's appeal to this Court, G.L. 1956 § 31-5-2.1(d) was amended by P.L. 2008, ch. 145, § 5. Becoming effective on July 1, 2008, this amendment provides that all decisions of the Motor Vehicle Dealers' License and Hearing Board are appealable to the Superior Court. However, the prior version of this statute — applicable at all pertinent times to the instant appeal — specified that decisions of the Motor Vehicle Dealers' License and Hearing Board are "appealable to the [D]irector of [A]dministration [. . .] [and] [t]he [D]irector's decision shall be appealable to the [S]uperior [C]ourt." Thus, the Court receives Appellant's appeal from a decision of the Director of the Department of Administration, upholding an adverse decision of the Motor Vehicle Dealers' License and Hearing Board.
[2] The Douglas Avenue Property was purchased by Mr. Payen in August 2003.
[3] The Board also conditioned the granting of the license on return of a BCI Report and obtaining a second-hand license. These conditions, however, are not material to the instant appeal. (Motor Vehicle Dealers' Hearing Board Results, June 22, 2006.)
[4] Although Appellant's application was denied in the September 15, 2006 letter from Chief Enforcement Officer Monteiro, both parties treated this letter as a formal decision of the Board.
[5] At this juncture, it is prudent to pause and acknowledge the unconventional nature of the Board's contention with respect to the application of the doctrine of administrative finality. Indeed, the underlying basis of the Board's argument for the application of this preclusive doctrine is that the Board, in fact, erred abinitio in affording consideration to Appellant's second license application. While certainly a novel contention, the Court observes that Appellant has failed to proffer any authority or rationale that would preclude the Board from taking such a position.
[6] The amended version of the Rules and Regulations that went into effect on December 6, 1983 provided, in pertinent part, as follows:
 "III) REQUIREMENTS FOR DEALERS
 "[. . .]
 "(b) `PLACE OF BUSINESS': Every dealer must establish a suitable place in which to conduct the business of dealing in motor vehicles. This The business must be housed in a building, on the premises, which contains at least 1500 2400 square feet of enclosed and heated floor space to provide a suitable office and space where motor vehicles may be properly repaired and serviced. Any dealer whose license expires at midnight, December 31, 1983, may be granted an exception to this requirement at the discretion of the Commission. Minimum floor space in all instances shall be interpreted as ground level space and in no instance shall basements or second floors or any upper or lower areas be considered in computing the required minimum amount of office, service or showroom enclosed space." Rules and Regulations of the Rhode Island Motor Vehicle Dealers' License Commission § III(b) (Dec. 6, 1983) (alterations in original).
 *Page 1